NEW-YORK,
May, 1822.

HOOKER
v.
CUMMINGS.

---

## HOOKER against CUMMINGS.

Rivers are to be considered navigable, as far as the sea ebbs and flows; and so far the right of *fishing*, as well as of navigation, is *common* to all; and in rivers not navigable, in that sense, or above the flow and reflow of the tide, the adjoining proprietors of the soil have the *exclusive* right of fishing opposite their land, to the middle of the river; but the public have an *easement*, or servitude, in such rivers, as highways, for passing and repassing with boats, &c. And all rivers which are, in fact, navigable, whether above the flow of the sea, or whether unaffected by the tide, in their whole extent, are, in regard to their use, *public* rivers, and subservient to the public use and accommodation, and subject to regulation by the legislature.

The fishery in *Salmon* river, in the county of *Oswego*, emptying into lake *Ontario*, and in which there is no ebb and flow of the tide, is not free or common to all; but belongs, exclusively, to the owners of the adjacent land.

THIS was an action of *trespass*. The declaration contained five counts. The *first* count charged, that the defendant, *vi et armis*, broke the plaintiff's close, (in the

town of *Richland*, in the county of *Oswego*,) covered with water, and did, then and there, fish in the said close, and the fish, to wit, 300 salmon, 300 trout, &c. of great value, &c. then and there found, caught, took, and carried away, &c. The *second* count charged, that the defendant broke and entered the plaintiff's several fishery in the river, called *Salmon* river, situate in *Richland*, in the county of *Oswego*, and then and there fished in the said fishery for fish; and the fish, to wit, 300 *salmon*, &c. then and there found and being, of great value, &c. caught, took, and carried away, &c. The *third* count charged, that the defendant fished in the plaintiff's free fishery in the said town, &c. and 300 salmon, &c. then and there being, caught, took, and carried away, &c. The *fourth* count was for taking and carrying away the plaintiff's fish, specifying the time, place, kinds, and value, &c. The *fifth* count was for breaking the plaintiff's close, at, &c., and treading down the plaintiff's grass and herbage there growing, &c.

The defendant pleaded, 1. Not guilty. 2. As to breaking and entering the plaintiff's close in the *first* and *fifth* counts mentioned, the defendant pleaded, that they were one and the same close, and not other or different; and that before and at the said several times when, &c. there was a common and public highway into, over, through and along the said close, in which, &c. for all the citizens of this state to pass and repass; wherefore the defendant, being such citizen, at the said times, when, &c. passed over and along the said close, in, by and along the said highway, then using the same as he lawfully might do, which are the same supposed trespasses in the introductory part of the first plea mentioned, &c. with a verification, &c. 3. And for further plea as to the fishing in the plaintiff's close in the *first* count mentioned, and catching, taking, and carrying away the fish, &c.; and as to the fishing in the several fishery of the plaintiff in the *second* count mentioned, &c. &c.; and as to fishing in the plaintiff's free fishery in the *third* count mentioned, &c. &c. &c.; and, also, as to catching, taking, &c. the fish of the plaintiff in the *fourth* count mentioned, by leave, &c. he said, that the plaintiff ought not to have or maintain his action thereof against him, because, he said,

that the fish in the first count, the fish in the second count, the fish in the third count, and the fish in the fourth count, mentioned, were and are the same fish, and not other or different; and the fishery mentioned in the first, second, and third counts, are one and the same fishery, and not other or different; and the defendant further said, that the said supposed fishery, in which, &c. at the several times when, &c. was, and still is, and from time immemorial has been, part and parcel of the said river, called *Salmon* river; and that the said part thereof in which, &c. now is, and at the said several times when, &c. was, and from time whereof the memory of man is not to the contrary, has been a public and common navigable river, in which the waters of the sea or lake, called *lake Ontario*, during all the time aforesaid, has flowed and reflowed; and that in the said part of the said river, called *Salmon* river, in which, &c., every citizen of the state, at the said several times, when, &c., of right had, and, of right, ought to have, and still hath, and of right has, the liberty and privilege of fishing; wherefore, the defendant, being a citizen of this state, entered into the said fishery, in which, &c. so being part of the said navigable river as aforesaid, where the waters of the said sea or lake flow, to fish in the said river, at, &c., when, &c., being seasonable times of the year for such fishing; and did the acts complained of, &c., with a verification, &c.

The plaintiff *demurred* to the *second* plea, and assigned special causes of demurrer, to wit: 1. That the plea is not an answer to the breaking and entering the closes of the plaintiff, as set forth in the first and last counts; 2d. That it is attempted, by the said plea, to make that an answer to both counts, which is an answer to one count only; 3d. That it is not an answer to the breaking and entering mentioned in either of the counts in particular; and is otherwise defective, insufficient, and informal. There was, also, a special demurrer to the *third* plea: 1st. Because, that plea is not an answer to the trespasses alleged in the first, second, third and fourth counts, which were particularly referred to in the introductory part of the said plea. 2d. Because, the plea attempts to make that an answer to the trespasses al-

NEW-YORK,
May, 1822.

HOOKER
v.
CUMMINGS.

leged in all the counts, which is an answer to the trespasses set forth in one of the counts only. 3. Because, the said plea does not allege that the tides of the sea, or of the lake, called lake *Ontario*, during all or any part of the time mentioned in the said plea, have flowed and reflowed in that part of the said river in which, &c. 4. That the plea is double, &c.

The defendant joined in demurrer.

*Talcot*, (A. G.) in support of the demurrer. The declaration in this case charges two distinct entries on two distinct closes. The defendant cannot, therefore, allege in his plea, that they are one and the same close, and so set up a justification as to one, in answer to both trespasses. The case of *Nevins* v. *Keeler* (6 *Johns. Rep.* 63.) is in point. There, the defendant's plea was held bad; and the Court said, that he should have pleaded not guilty as to all but the one close, and a justification as to that. The second plea is, therefore, bad.

Again; the third plea is liable to the same objection. One close is alleged to be a free fishery, and the other a several fishery, which are, in their nature, distinct closes. This plea is, also, bad on another ground. *Salmon* river is not a river in which the public have any common right of fishery. The plea alleges that it is a public and common navigable river, into which the sea, or lake, called lake *Ontario*, flows and reflows. But it is notorious, that there is no regular flow of tide in lake *Ontario*; and, of course, there can be no flux or reflux of tide in any river which empties into that lake, within the meaning of the rule of the common law. *Salmon* river is not common or public, nor has it been declared to be so by any statute. Sir *Matthew Hale*, in his treatise *de jure maris*, &c. ch. 1. (1 *Harg. Law Tracts*, p. 5.) says, "Fresh rivers, of what kind soever, do, of common right, belong to the owners of the soil adjacent; so that the owners of the one side have, of common right, the propriety of the soil, and, consequently, the right of fishing, *usque filum aquæ*," &c. "And if a man be owner of the land on both sides, in common presumption, he is the owner of the whole river, and hath the right of fishery, according

NEW-YORK,  to the extent of his land in length." *Fresh* rivers are, *pri-*
May, 1822.  *ma facie*, private property.   In the case of the *People* v.
HOOKER   *Platt*, (17 *Johns. Rep.* 195.) relative to the *salmon* fishery
v.   in the river *Saranac*, this Court adopt the principles laid
CUMMINGS.  down by Lord *Hale*.   In the case of *Adams* v. *Pease*, deci-
ded in the Supreme Court of Errors of *Connecticut*, (2 *Day's
Connect. Rep.* 481.) it was decided, that the owners of land,
adjoining the *Connecticut* river, above the flux and reflux of
the tide, had an exclusive right of fishery opposite to the
land owned by them, to the middle of the river, and that
the public had an *easement* in the river, as a highway, for
passing and repassing, with vessels, boats, or any water-
craft.   In fact, a river, in its whole course, may partake of
the three kinds of rights :   As far as the tide flows and ebbs,
it is a public river, both as to fishing and navigation.   Above
the flow and reflow of the tide, it is private as to the right
of fishing, but public as to transportation, by vessels and
boats ; and, higher still, or where the river is fresh, it is
wholly private property.

*N. Williams*, contra.   1. The important question in this
case is, whether *Salmon* river is a *public* river, open to the
common use of all the citizens of the state, for the purpose of
fishing ?   The defendant puts his right on that broad basis ;
although it is well known that this river has been used in
common for navigation and fishing, during the last twenty-
six years.   Then what is necessary, by the common law, to
render a river public, and subject to the public or common
use ?   A *free* fishery and *common* fishery mean the same
thing.   (*Co. Litt.* 122 a. *Harg. note* 23.   2 *Bl. Com.* 40.)
It seems to have been rather hastily admitted, in some late
*American* cases, that the flow and ebb of the tide, is the only
criterion by which to determine whether a river is navigable
and open to the public use or not.   This doctrine owes its
origin to Lord *Hale*, in the treatise which has been cited.
But the fair inference from what Lord *Hale* has said, ap-
pears to be, merely, that where the tide flows and reflows,
the river is, *prima facie*, navigable and common to all.   He
so states the rule in Lord *Fitzwalter's* case, (1 *Mod.* 105.)
" A river," he says, " that flows and reflows, and is an arm

of the sea, is, *prima facie*, common to all." The soil of the
river *Severn*, he observes, belongs to the lords on either side,
and a special sort of fishery belongs to them likewise; but
the common sort of fishery is common to all. And "there
is no such contradiction betwixt the soil being in one, and
yet the river being common to all fishers," &c.  The true
test of a river being public and open to all, is its being *na-
vigable*.  *Fresh* rivers, according to Lord *Hale*, are not na-
vigable. In *Warren* v. *Matthews*, (6 *Mod.* 73. S.C. 1 *Salk.*
357.) Lord *Holt* lays down the rule, according to this dis-
tinction.  He says, " the subject has a right to fish in all
navigable rivers, as he has in the sea."  And in *Carter* v.
*Murcot*, (4 *Burr.* 2162.) Lord *Mansfield*, in 1768, adopts
the same distinction.  " In rivers not navigable," he says,
" the proprietors of the land have the right of fishery on
their respective sides, and it generally extends *ad filum me-
dium aquæ*.  But in *navigable* rivers, the proprietors on each
have it not; the fishery is common : it is, *prima facie*, in the
king, and is public.  If any claim it exclusively, he must
show a right, by prescription or otherwise."  The same
Judge, afterwards, in 1774, keeping in mind this same dis-
tinction, repeats the same doctrine:  " How does it appear,"
says he, " that this is a navigable river ?  The flowing
and reflowing of the tide does not make it so; for there
are many places into which the tide flows, that are not na-
vigable rivers."  He clearly considers it as a question *of
fact*, whether a river is navigable or not.  *Ex facto oritur
jus.*  (*The Mayor of Lynn* v. *Turner*, *Cowp.* 87.)  In
*Ward* v. *Cartwell*, Chief Justice *Willes* adopts the same doc-
trine.  (*Willes' Rep.* 265. 268.)  He observes, that this is
not merely the law of *England,* but the law of Nations ; and
he cites *Grotius*, *B. et P.* lib. 2. c. 3. s. 9.  *Bract.* b. 1.
c. 12. s. 6. (*a*)

(a) " Publica vero sunt omnia flumina et portus, *Ideoque* jus piscandi omnibus
commune est in portu et in fluminibus.  Riparum etiam usus publicus est de
jure gentium, sicut ipsius fluminis.  Itaque naves ad eas applicari, funes arbo-
ribus ibi natis religari, onus aliquid in iis reponere, cuivis liberum est sicuti in
ipsum fluvium navigari : sed proprietas earum est illorum quorum prædiis
adhærent ; et, eadem de causa,. arbores in eisdem natæ eorundum sunt : et hæc
intelligenda sunt, de fluminibus perennibus ; quia temporalia possunt esse pri-
vata."

No doubt, the flowing of the tide, according to the com-mon law, makes a river, *prima facie*, navigable. But when a river is, *in fact*, used by the public as a navigable river, no *prima facie* evidence is wanted as to its being pub-lic. Every one has a right to navigate it, and to fish in it. (*Miles* v. *Rose*, 5 *Taunt.* 705.)

Whether *salmon* or any other kind of fish frequent a river, can have no influence in the consideration of this question; (17 *Johns. Rep.* 211.) which is merely, whether the river is navigable, and subject to a public servitude or easement. On the doctrine that the flow and ebb of the tide is what renders a river navigable or public, what is to become of the great inland seas or lakes of *Europe* and *Asia*, as well as of the still greater lakes and rivers of this country? In the *Mediterranean* there is no perceptible tide. " There shrinks no ebb in that tideless sea." The common law of *England*, on this subject, was never intended to be applied to the large rivers of this country; nor has it, in fact, been adopted; but, on the contrary, our rivers have always been free to all our citizens, for fishing as well as for navigation. In *Carson* v. *Blazer*, (2 *Binney's Rep.* 475.) Chief Justice *Tilghman* so considers it; and says, that the rule of the *English* common law has never been applied to the fresh wa-ter rivers in *Pennsylvania*. *Yeates*, J. observed, that " the qualities of *fresh* or *salt*, or the flux and reflux of the tide, cannot decide whether a river is navigable or not." If ri-vers, in which the tide does not flow, are private property, then the islands in those rivers must belong to the owners of each shore, a doctrine which has never been asserted in this country, as to any of our navigable rivers. That *Salmon* river is a navigable river, and that the water of lake *Ontario* flows into it, are facts admitted by the demurrer; and if the river is private property, so also must be the lake, on the same principle. What, then, is the rule of law in this state? It is, that any river, which is subservient to public use, is common to all, for the purposes of fishing, as well as navi-gation; though a private individual may be the owner of the soil. If *Salmon* river is susceptible of such use, as a common passage for the public, then, according to establish-ed law and usage, the *fishing* in it is common. In the case

of the *Saranac*, Mr. J. *Platt* said, that it was conceded, that the river was not navigable for boats of any kind; and that the defendant had enjoyed the sole right to the river for more than thirty years. That "the power of regulating and controlling the use of the *Saranac*, to subserve the public interest, would have been implendly reserved, had the river been navigable." (S. P. 10 *Johns. Rep.* 236. 238.) In *Palmer* v. *Mulligan*, (3 *Caines' Rep.* 307.) all the Judges considered the *Hudson* river, above tide water, where it was navigable, as common to all; as a highway. Though the Chief Justice seemed to recognise the *English* doctrine, as to the ebbing and flowing of tides, he admitted that fresh rivers of every kind may be under the servitude of the public, and be regarded as common highways, by water. That *Salmon* river has been so considered, is evident from the statutes regulating the fishery in it. (2 *N. R. L.* 544. sess. 35. ch. 131. sess. 37. ch. 213.)

If, then, this river is a highway, any person may take fish in it, for fish are *feræ naturæ*, and become the property of the first taker. (2 *Bl. Com.* 392. 403. *Cooper's Justinian*, b. 2. tit. 1. s. 12.) Trespass will not lie for taking fish in a free fishery; for the plaintiff can have no fish until he takes them. (3 *Mod.* 97.)

2. As to the pleadings: The *first* plea of not guilty is an answer to the charge of breaking and entering the closes, and to all that depends on force: The *second* plea justifies as to the first and last counts, by stating that both the closes were *public highways*, &c. (2 *Chitty's Pl.* 570, 571.) It was not necessary to state how they became so. (3 *Term Rep.* 265. 8 *Term Rep.* 608.) The *third* plea justifies as to all the other counts, enumerating the trespasses, &c. by stating that the *locus in quo*, which is the same in all the counts, is, and has been a *navigable* river, &c. (1 *Chitty's Pl.* 506, 507, 533. 2 *Chitty's Pl.* 556, 557. 562.)

*Talcot*, (A. G.) in reply. The third count is for entering a free fishery; and a free and common fishery are the same. There is a precedent in 2 *Chitty's Pl.* for such a count.

The question here, is not whether the public have a right of fishing in a navigable river, but what is a navigable ri-

ver, in the common law sense of the term ; and we contend, that in the common law acceptation of that term, no river is navigable where the tide does not flow and reflow.. In *Palmer* v. *Mulligan,* (3 *Caines,* 315.) Chief Justice *Thompson* adopts the rule of the common law of England, as laid down in the treatise of Sir *Matthew Hale ;* and *Kent* J. refers to that treatise with the highest approbation, and considers that the true and just rule on the subject is there laid down; and so do all the Judges in the case of *Adams* v. *Pease,* in regard to the *Connecticut* river.

SPENCER, Ch. J., delivered the opinion of the Court.
The case of *Nevins* v. *Keeler,* (6 *Johns. Rep.* 64.) is decisive, that the second and third pleas are informal. They profess to answer the whole declaration. The defendant should have justified as to one *locus in quo,* and pleaded not guilty to all but one close. He had no right to narrow the plaintiff's declaration in the manner attempted; and the plaintiff could not take issue on the allegation that the several closes were one and the same, and that the fisheries were one and the same. But the real question in the cause is, whether the defendant has set forth, in the third plea, sufficient matter to bar the plaintiff's right of action. He alleges that the *locus in quo* is part and parcel of *Salmon* river, and that the part thereof in which, &c., is, and always has been, a public and common navigable river, in which the waters of lake *Ontario* have flowed and reflowed, and that every citizen of the state has the right of fishing therein ; and therefore, &c. justifying the fishing complained of by the plaintiff.

We cannot consider this plea as setting up, that the waters of *Salmon* river are not fresh water; or that the flowing of the waters of lake *Ontario* into it, and the reflowing thereof, are the flux and reflux of the tides, or any thing else than occasional and rare instances of a swell in the lake, and a setting up of the waters into the river, and the subsiding of such swells ; nor can we understand the allegation, that it is a public and common navigable river, in any other sense, than that it is used with boats and small craft. I will not say, that we can judicially notice the real state of the facts, but they are indisputably so ; and as the plaintiff must have

judgment on this demurrer, for the formal defects of the pleas, it would probably be desirable to both parties, that the Court should pronounce an opinion on the facts as they are, and as they would prove to be, on a trial. I shall, then, assume, that *Salmon* river is a fresh water river, that there is no regular flux and efflux of the tide in it, that it is navigable only for boats and small craft, and that it has all been granted by the state to private individuals. In the case of *The People* v. *Platt* and others, (17 *Johns. Rep.* 195.) we were not called upon to decide this precise question, because the river *Saranac* was not navigable for boats of any description, although salmon ascended into it, beyond the obstruction occasioned by *Platt's* dam; but we recognised the principles of the common law to be, that in the case of a private river, that is, where it is a fresh water river, in which the tide does not ebb and flow, and is not, therefore, an arm of the sea, he who owns the soil has, *prima facie*, the right of fishing; and if the soil on both sides be owned by an individual, he has the sole and exclusive right; but if there be different proprietors on each side, they own, on their respective sides, *ad filum medium aquæ*. We considered, in the case referred to, that it was not inconsistent with this right, that the river was liable and subject to the public servitude, for the passage of boats; the private rights of the owners of the adjacent soil were no otherwise affected, than by the river's being subject to public use. The same doctrine was advanced by *Kent*, Justice, in *Palmer* v. *Mulligan*, (3 *Caines' Rep.* 319.) without any dissent by the other Judges. The case of *Adams* v. *Pease* and another, (2 *Connecticut Rep.* 481.) has been published since the decision of the case of *The People* v. *Platt*, and there is an entire coincidence of opinion. All the Judges there held, that the owners of land adjoining *Connecticut* river, above the flowing and ebbing of the tide, have an exclusive right of fishing opposite to their land, to the middle of the river; and the public have an *easement* in the river, as a highway, for passing and repassing with every kind of water craft. The decision of that case was placed on the same adjudged cases as were relied upon in the case of *The People* v. *Platt*.

NEW-YORK,
May, 1822.

HOOKER
v.
CUMMINGS.

The defendant's counsel supposes, that the common law of *England*, which he seems to admit, if applied to this case, would be decisive against his client, is inapplicable here, as our navigable rivers are formed on a much larger scale than those in *England;* and that where the Judges of their Courts, or their elementary writers, have said that the right of fishing was a common and a public right in naviga-ble rivers, in which the tide ebbs and flows, they have adopted the ebbing and flowing of the tide as evidence of the navigability only of the river; and that, therefore, where the fact of navigability is proved, and does exist, in any given case, the river is, and must be, public. This I con-ceive to be a mistaken idea. The common law of *England* considers a river, in which the tide ebbs and flows, an *arm of the sea*, and as navigable, and devoted to the public use, for all purposes, as well for navigation as for fishing. It, also, considers other rivers, in which the tide does not ebb and flow, as navigable, but not so far belonging to the pub-lic as to devest the owners of the adjacent banks of their exclusive rights to the fisheries therein. The case of *Car-son* v. *Blazen*, (2 *Binney's Rep.* 475.) has been much re-lied on to sustain the doctrine contended for by the defen-dant's counsel. In that case, only two of the Judges gave opinions as to the common law right of the proprietor of the bank or margin of the *Susquehannah*, to the exclusive enjoy-ment of the fishery opposite to his shore; and it will be seen that they admit the common law of *England* to be in favour of the right claimed; but they supposed, that the people of *Pennsylvania* had not adopted that part of the *English* common law, as it was not deemed proper in that country. They placed great stress, too, on several acts of the Assembly, declaring that river to be a highway, and regulating the fisheries, which they held to be incompatible with the common law right. They rejected, as inapplicable to them, the common law principle, that the flux and reflux of the tide ascertained the character of the river. Now, I do not feel myself authorized to reject the principles of the *English* common law, by saying they are not suited to our condi-tion, when I can find no trace of any judicial decision to that effect, nor any legislative declaration or provision,

NEW-YORK,
May, 1822.

HOOKER
v.
CUMMINGS.

leading to such a conclusion. Indeed, I concur in the opinion expressed by the late and present Chief Justice of *Connecticut*, in the case cited, that a more perfect system of regulations on this subject could not be devised: it secures common rights, as far as the public interest requires, and furnishes a proper line of demarcation between them and private rights ; that is, by considering rivers navigable as far as the sea flows and reflows, and the right of fishing as common to all ; and rivers not, in that sense, navigable above the flow and reflow of the sea, in which the adjoining proprietors have the exclusive right ; and I concur in the doctrine, that all rivers, in fact, navigable, whether above the flow of the tide, or whether in its whole extent unaffected by the tides, in reference to the use of them, as public, and subservient to public accommodation, and liable to governmental regulation. I agree, also, with Chief Justice *Hosmer*, in the position, that the doctrine of the common law promotes the grand ends of civil society, by pursuing that wise and orderly maxim, of assigning to every thing capable of ownership, a legal and determinate owner. Lord *Mansfield's* opinion, in *Carter* and another v. *Murcott* and another, (4 *Burr.* 2162.) has been misconceived ; the defendant's counsel supposed it to be favourable to the pretensions set up by the defendant, but it is directly otherwise. He says, "In navigable rivers, the proprietors of the land on each side have it not ; the fishery is common ; it is, *prima facie*, in the king, and is public." The case under consideration was that of a navigable river, which was an arm of the sea ; and his lordship spoke of navigable rivers in the common law sense of the term, or of such as were arms of the sea.

The defendant's counsel laid some stress on the acts of the legislature, (2 *R. L.* 544. and the act, sess. 37. ch. 214.) regulating fishing, and the taking of salmon, in *Salmon* river. These acts prove nothing; for the legislature have, confessedly, the right of regulating the taking of fish in private rivers ; and do, every year, pass laws for that purpose, as to rivers not navigable in any sense, and which are, unquestionably, private property.

There must be judgment for the plaintiff, with leave to the defendant to plead *de novo*, on payment of costs.

Judgment accordingly.