Judge Wright
delivered the opinion of the court:
If, in legal contemplation, the main branch of Paint creek to its center or channel is the boundary of Taylor’s survey, the plaintiff has no title; but if the creek described was the ravine, or the inner side of what is called the island, 'then the plaintiff has a legal title to the island.
As we understand Taylor’s survey, the creek is its boundary, It begins on the upper side of the mouth of' a branch, thence up the creek bounding thereon. It is difficult for us to understand how any one can dispute the proposition that such description makes the creek the boundary. We entertain no doubt it is the legal boundary in this case. A boundary on a stream like Paint creek, not navigable, is a call for the channel or middle of the creek. A call for Paint creek is a call for the main stream, not a mere branch of the creek. Whether the *tract claimed as [508 an island be one, that is, land permanently surrounded by water, or a peninsula, sometimes insulated by water flowing through a ravine, or into a bayou, makes no difference. The boundary being-the main channel or center of the creek, islands, properly so called, will belong to the proprietor of- that side of the channel where the island is found. This disembarrasses the case of the inquiry, whether the creek is an island or not. The main branch of Paint creek is between the ground called an island and King’s survey, not between the island and the main land of Taylor’s survey.
King’s survey covered the land on the upper side of the creek to its channel. Taylor took the other aide to the same channel. As the same line bounded the opposite proprietors, there could be no unappropriated land which Benner .had a right to survey and appropriate to himself; therefore the survey and patent to-him convey nothing.
The case of McCulloch’s Lessee v. Aten, 2 Ohio, 309, has been *516 examined. In that ease, the court were called upon to establish for the defendant a boundary on the bank of a creek not navigable. The boundary described in the deed, as the court state it, was down the creek, with the several meanders thereof. The court say, we understand it to be a settled rule, whenever the stream is made the boundary, it is the water, and not the center of its channel that is referred to. So far is very well. The court then commented upon the case in 5 Wheat. 374, involving the southern boundary of the state, the Ohio river, as sustaining their opinion. That decision established low-water mark as the boundary, not the bank. The Ohio is a navigable river; it is moreover the boundary of state jurisdiction and sovereignty, and could only be a proper boundary for such purpose, while each state was limited to its own side of the water, because the jurisdiction of each in its very nature is exclusive of all others. Virginia, being the original proprietor of both banks of the Ohio, granted' to the United States all lands lying northwest of that river. This was held to convey only to low-water mark. If Virginia had not been the original proprietor of both banks of the river, and it was the common boundary, the line would be the center, and the islands go with the adjoining main-land on that side of the channel where they lie. The opinion of the court, in the first case, goes on to de509] clare the meanders of the creek (a *stream not navigable) to mean the water’s edge at low water. It seems to us this expression was used inadvertently, without regard to the difference between a navigable river and a stream not navigable. Establishing the water’s edge as the boundary, instead of the channel, gave to the plaintiff, in the case before the court, all he sought for in that ease, a salt well. The land lying between the edge of the water and the channel was not in contest. We do not think the court intended to decide that a boundary upon an unnavigable stream called only to the edge of low water.
We are strengthened in this bolief by a later case decided in bank, Gavit v. Chambers and Coates, 3 Ohio, 496, where the rights •of a grantee bounded on the Sandusky river, a stream by the court regarded as navigable, were settled. The opinion of the eourt in that case examined the doctrine of boundaries upon such streams. The court holds all grants by the United States upon such waters to be subject to the rule pf the common law, which, in such cases, is the plain rule of common sense. It is, say the *517 court, that “ he who owns the land upon both banks owns the entire river, subject to the easement of navigation; and he who owns the land upon one bank only owns to the middle of the river, subject to the same easement.” This is the rule recognized not only in England but in our sister states. 20 Johns. 90; 17 Johns; 195 ; 3 Caine, 319 ; 3 Kent C. 344, 345; 7 Mass. 496; 4 Pick. 268 ; 2 Bin. 475; 4 Pick. 268; 2 Conn. 481. At common law the beds of all rivers, not subject to the ebb and flow of the tides, are held the property of the owners of the adjoining banks.
Section 9 of the act of Congress for the disposition of the United States lands in the Northwest territory is pressed upon our consideration as settling the question in this case, and making the bed of the river common to proprietors bounding on the river. In the case of Gavit v. Chambers and Coates, the court held that provision “ confined to reserving the use of navigable rivers, and to declaring the existence of the common law doctrine in respect to streams not navigable,” making the right to the soil in unnavigable rivers individual property to the middle of the stream, and the use of the stream common to them. But the act is not supposed to bear upon the case before the court, because by its express terms its provisions are limited to lands to be disposed of by the act. The lands lying between the Scioto and Little Miami rivers are not disposed of by *the law, but were reserved [510 before its passage to satisfy Virginia military warrants.
I have examined with some care a number of authorities pressed upon the court by the counsel for the defendant with unusual earnestness and pertinacity. I am unable to elicit from the decisions any principle at all conflicting with any point decided by this court at the trial or maintained now. There are many things connected with the adjustment of settlement, rights, and entries, connected with the improvements of the locator, the figure, the surveys, and the general convenience of the country that have no application, except to countries and rights similarly situated. There, as here, however, where there are several' calls in the deed or survey which conflict with each other, that one yields to the others which is least essentially to affect the general object of the survey, the certain description of a tract of land. Upon that principle it was decided, in 3 Bibb, 205, that when it is apparent that the description binding on the creek forms no part of the boundary, as particularly described in the deed, and can *518 not be conformed to by complying with the express calls of boundary, it seems pretty clear that it should be considered as yielding to the more special specification of boundary, and under such circumstances a line binding on the creek might leave its meanders, and be run straight, in order to give effect to a survey and grant. In the case before us we think the creek is clearly the boundary of the survey, and there is no necessity in the case pressing it to yield to anything more or less certain.
The law on the point reserved is with the defendant, and the Verdict and judgment will be entered accordingly