Grimjke, J.
The deed to Bacon may be laid out of the question as not affecting the present controversy. It piurports to convey only an easement. It is not an outstanding title, which interferes with the right of the plaintiff to the soil and freehold. Nor is it a question whether the dead to the plaintiff conveys the land and water to the center of the river, since Virginia only granted the territory on the northern bank of the river to low-water mark, although, by the compact of 1792, between Virginia and Kentucky, a concurrent jurisdiction over the river is accorded to Ohio and Kentucky. There is also no question but what the deed to the plaintiff comprehends, within its description, so much of tholand as lies between high and low-water mark. The question is, simply, had George Poago capacity to convey to that extent? In other words, is the shore of the river common to the public, or does it belong to the adjacent proprietor?
The Ohio is a navigable river; it would be so considered, even if it were not expiressly declared to be such by the deed of cession. This, however, does not determine the question, for there are two kinds of navigable rivers. If we resort to the technical and legal definition of a navigable river, it is that part of the stream only where the tide ebbs and flows. The shore, *below high- *123 water mark, belongs to the public. But grants of lands, bounded on rivers, or upon the margins of the same, above tide-water, carry the exclusive right of the grantee to low-water mark, or, as some of the authorities say, to the center of the stream. None of our rivers, in the western country, are navigable in the technical acceptation of the term. They all fall within the second class. The distinction was originally made in order to define the jurisdiction of the admiralty courts.
In Arnold v. Murndy, 1 Halst. 1, it was said that a grant bounded upon navigable water, where the tide ebbs and flows, extended to high-water mark when the tide was high, and to low-water mark when the tide was low, so as to constitute what Lord Coke called a movable freehold. Co. Lit. 48, b. But this opinion does not appear to have been followed anywhere else. In Cooper v. Smith, 9 Serg. & R. 26, 32, it was held that the right to the bed of a navigable river, where the tide did not reach, was presumed to belong to the public, while the right to the shore belonged to the adjacent proprietor. And in Shrunk v. Schuylkill Navigation Co., 14 Serg. & R. 74, it was decided that the owners of the soil adjacent to the large rivers, in Pennsylvania, do not own the bed of the river to the center. This appears to have been the settled law in Pennsylvania from a very early period. It has, in some measure, effaced the common law distinction between rivers navigable and not navigable. It preserves the distinction, so far as to declare that the river itself is public property; and it destroys it, so far as to make the land between high and low-water mark the property of the riparian proprietor.
But, in Now York, the common-law doctrine has been carried to its utmost extent, and considering all rivers whore the tide does not ebb and flow as not navigable, the adjacent proprietor has been deemed to be possessed to the center of the stream. This was so held, in the People v. Platt, 17 Johns. 195; Hooker v. Cummings, 20 Johns. 90. And, in this last case, it was decided, as a necessary consequence of the doctrine, that the islands in the rivers were the property of the owners of the opposite shores. In South Carolina, a*rule, similar to that in Pennsylvania, appears from the case of Executors of Cotos v. Wadlington, 1 McCord, 580, to have been adopted. It was held that the rule of the English common law, that no river is navigable except where \he tide ebbs and flows, is not applicable to that state so as to en *124 title the proprietor of land adjacent to a large river, but which is unaffected by the tide, to hold to the middle of the stream. All the authorities, however, agree in giving the adjacent proprietor so much of the land as lies between high and low-water mark.
It appears to have been an unsettled question, in England, until a late period, whether individuals have a right to a tow-path for towing vessels up and down rivers, and it was not until the case of Ball v. Herbert, 3 Term, 253, finally determined that they had not, and contrary to the opinion of Sir Matthew Hale.
But, by banks of the river, in that case, it must be meant the lands above high-water mark; otherwise it would overturn the common-law distinction between rivers navigable and not navigable, for it was admitted, in that case, that the Ouse was a navigable river where the tide ebbed and flowed.
All the authorities, however, as I before remarked, concur in giving the adjacent proprietor a right to the land between high and low-water mark in rivers which are unaffected by the tide. The plaintiff is, therefore, entitled to judgment.
Judgment for plaintiff.