MARTHA & ELIZABETH, The (LARCO v.). See Case No. 8,087.

# Case No. 9,146.

## The MARTHA ANNE.

[Olc. 18.] [1]

District Court, S. D. New York. Nov., 1843.

ADMIRALTY—JURISDICTION — LONG ISLAND SOUND—TORTS—ILLEGAL SEIZURE—DAMAGES—MITIGATION.

1. This court has jurisdiction on the instance side over maritime torts committed within the ebb and flow of tide.

2. Long Island Sound is not only, in common law acceptation, an arm of the sea; it is a strait and parcel of the high seas; it is not within the territorial limits of any particular state.

3. The inhabitants of Oyster Bay township have the exclusive right to the oyster fishing within that bay. And the town has authority to enact and enforce by-laws in support and protection of that right. But process issued by a justice of the peace, under the authority of those laws, cannot be executed on the Sound.

4. The seizure and detention of the libellant's vessel, for the purpose of executing such process on board her, was a maritime trespass and tort.

1 [Reported by Edward R. Olcott, Esq.]

5. An action in rem against the vessel attached, and in personam against the respondent, her master, will lie in this court for the tort.

[Cited in The Florence, Case No. 4,880.]

6. The libellant is entitled to recover damages in this action, in satisfaction of the injury he has sustained. But those damages should be mitgated, upon the consideration that the respondent was acting under the command of officers of the law, and without intention to do the libellant any wrong.

In admiralty.

W. J. Haskett, for libellant.

Emerson & Pritchard, for claimant.

BETTS, District Judge. The pleadings and proofs in this cause are exceedingly diffuse and contradictory. The case to be gathered from them is, substantially, this. On the 2d of June, 1843, a number of fishing craft, of which the sloop Bahama, owned by the libellant, was one, went into Oyster Bay, on Long Island Sound, anchored in tide waters, and engaged in dragging and raking oysters, and taking them on board. None of the vessels or persons employed in them belonged to Oyster Bay, The libellant resided in Pelham, Westchester county, where the Bahama also belonged. The township of Oyster Bay, by an ordinance or by-law, authorized by the laws of the state of New-York (1 Rev. St. 336), prohibited any person who was not an inhabitant of the town, dragging or raking oysters within the bay, and subjected the person complained of and convicted of the offence, to a fine, &c.

Complaint was made by the supervisors of the town before a justice of the peace of the town, that the above mentioned vessels, including the Bahama, with their crews, had violated the law, and were then in the act of fishing oysters within the bay. Whereupon the justice issued a warrant to a constable of the town, commanding the arrest of the persons complained of. About the same time, the said oyster craft all made sail, and left the bay, running out into the Sound. The sloop Martha Anne was, at the time, in Oyster Bay, and was taken possession of by the constable, under the orders of the magistrate and supervisors of the town, to go in pursuit of the oyster craft, then under way. A posse of forty or more men were also summoned on board the sloop to aid the constable in making the arrest of the fishermen. Many of them took fire-arms on board, and the constable was accompanied in the expedition by the supervisor and justice of the peace, who issued the warrant of arrest, all of whom gave orders to the company on board the sloop to proceed and arrest the accused, and acted in directing and aiding the execution of the orders.

The sloop, thus prepared, sailed in pursuit of the oyster craft, and as she neared them, they were huddled together, some dozen in number. The men on them forbid the approach of the sloop; and by threatening to use various weapons, which were brandished and presented, including axes and fire-arms, endeavored to keep her and her company off. The sloop was, however, navigated so as to be brought up against and made fast to the Bahama, when twenty or more men from her, several of them with fire-arms, sprang on board and arrested all the persons found there, who were brought back in the Martha Anne to Oyster Bay. The respondent was master of the Martha Anne, and under the orders of the civil officers before mentioned, aided in navigating her out, and in towing back the Bahama to Oyster Bay harbor. It was proved that she was brought back to save her, there being no one on board to take charge of her after her master and crew were arrested. The Bahama was anchored and left by those who brought her back in that harbor, but her master was held in arrest under the warrant, and was taken before a justice of the peace, who condemned him to pay a fine for the offence charged against him. No one interposed to prevent the libellant resuming possession and free use of the sloop subsequently, but he allowed her to remain unreclaimed and falling to decay at her anchorage.

The respondent and claimant except to the jurisdiction of this court in the case, because the subject matter is within the cognizance of the local courts, and the remedy of the libellant, if any he has, lies at law, and not in admiralty. This objection would be unavailing in the English admiralty, provided the locus in quo, where the transaction took place, was upon the high seas. 3 Black, 106; 2 Browne, Civ. & Adm. Law, 107, 201. So under our federal system, district courts proceeding as courts of admiralty and maritime jurisdiction, have cognizance on the instance side, of maritime trespasses and torts, both in rem and in personam. The Almeida, 10 Wheat. [23 U. S.] 473; Dean v. Angus [Case No. 3,702]; L'Invincible, 1 Wheat. [14 U. S.] 238; McGrath v. The Candalero [Id. 8,809]. The subject matter, then, indisputably appertains to the jurisdiction of this court, provided the place in which the wrongful acts were done was so also. In this respect, our national judiciary has a wider admiralty and maritime authority than is exercised by English courts of admiralty. It extends over all navigable waters where the tide ebbs and flows, and is not, as is urged with great learning and force of reasoning, restricted by the condition that the waters be out of the territorial limits of the states. De Lovio v. Boit [Id. 3,776]; Hale v. Washington Ins. Co. [Id. 5,916]. But in this case the proof is clear that the libellant's vessel was come upon by the respondent and the Martha Anne, near the centre of Long Island Sound. The Sound is an arm of the sea, within the common law acceptation of the term, being navigable tide-water (Hargrave, Law Tracts, c. 5; Carter v. Murcot, 4 Burrows, 2162; Hooker v. Cummings, 20 Johns. 98), and

more specifically an arm of the sea than mere rivers, bays or inlets; because, in addition to its tide-water and navigable quality, it is without the territorial limits of any county (1 Kent, Comm. 364, 367.) It more properly is a strait, or inland sea, having communication with the ocean at each end, and lying between a long extent of land on two sides of it. Jacobs, Law Dict. "Straits." But what imparts an unquestionable maritime jurisdiction to the United States courts over its waters, and renders it within our jurisprudence, the high seas, is, that it is not within the territory of any particular state of the Union.

In my opinion, therefore, there is no solid ground of exception to the jurisdiction of the court over the case presented by the libel. The libellant is entitled to satisfaction for the wrong he has sustained, out of the vessel which was the instrument by which it was inflicted, and against the master who was the agent causing it. The great stress of the contestation in the cause between the parties has been upon the right of the inhabitants of Oyster Bay to the exclusive fishing of oysters in that bay, and the power of the corporation of the town to enact and enforce the ordinance or by-law in question. I do not go into that subject. It has been largely discussed in the state law courts; and the statute law of the state, together with the decisions of those tribunals, undoubtedly settle that point conclusively, independent of the coincidence of decisions of the federal courts with the doctrines laid down by the state courts. 6 Cow. 376; Id. 545, notes; 20 Johns. 90; Wend. 237; 5 Wend. 423; 14 Wend. 43; 1 Rev. St. 336; Bennett v. Boggs [Case No. 1,319]; [Martin v. Waddell] 16 Pet. [41 U. S.] 367.

The bearing upon that topic is unimportant to this case, because, conceding the exclusive title to the fishing in Oyster Bay is vested in the inhabitants of that town, and admitting the validity of the by-laws passed to support the title, and the regularity and conclusiveness of the proceedings before the magistrates to enforce those by-laws and arrest the parties accused on the occasion in question, yet no authority could be derived from those facts to seize or molest the libellant's vessel at the place where she was trespassed upon and arrested. That place was entirely out of the jurisdiction of the local magistrates. The law creating the county of Queens does not extend its boundaries into the Sound. 3 Rev. St. 2. And, accordingly, there is no color of right shown in justification of the acts complained of, and the libellant is entitled to a decree against the respondent and the Martha Anne, for remuneration of loss thus sustained by him.

I do not think those damages should be of an aggravated or exemplary character against these parties. The respondent did not inflict the wrong wantonly. There is no evidence that he volunteered his sloop or himself personally in the enterprise. He acted under the direction of officers of the law, who could rightfully exact the assistance demanded within the territory of the county; and there was sufficient probable cause for him to submit himself and his vessel to their commands, to remove all presumption of a wilful purpose on his part to perpetrate a wrong and trespass on the property of the libellant. The testimony does not fix upon him any further participation in the tort than being present with his vessel. He is undoubtedly legally responsible to the libellant for the injury inflicted, but the case made out does not call for vindictive or extraordinary damages against him. The Bahama was taken back to Oyster Bay by order of the public officers controlling the proceedings, and anchored there, within one hour after her arrest, and was there left in a safe position and one easy of access for the libellant; and it does not appear that he was in any way prevented resuming immediate possession of her. This, in my judgment, is the reasonable bearing and result of the statements of the witnesses given on the hearing.

I shall order that the libellant recover $50 and his costs, to be taxed, and that he take a decree in rem against the vessel, and in personam against the respondent therefor.