Eollett, J.
A correct understanding of the facts of this case, set forth and shown in the statement and diagram heretofore, is necessary to the proper application of the legal principles that determine the rights of the parties.
But plaintiffs’ rights depend greatly upon the true construction of the deed of Marvin Kent and wife to them, dated March 3, 1868.
And the defendant’s rights depend upon what was conveyed to its grantor by the trustees ot the Pennsylvania and Ohio Canal Company after the ouster of that company by this court, as shown in the case of The State ex rel. Attorney-General v. Pennsylvania & Ohio Canal Co., 23 Ohio St. 121.
I. What rights has the defendant, The Pittsburg, Youngstown and Chicago Railroad Company, in this disputed property ?
The Eranklin Land Company owned both sides of the Cuyahoga river where this property is in dispute,,and, while such owner, it made the contract with the Pennsylvania and Ohio Canal Company, dated May 27, 1836.
The contract provided that “said canal shall be constructed between two walls in the river bed and so far from the east bank of the river as to leave a space between said east bank and the walls of the canal of sufficient width for a convenient tail race for such wheels as said land company or their assigns may there construct, and this race shall be excavated by said canal company the whole length to a level with the apron under the wheels of the flouring mill bought by said land company of Zenas Kent, and pass *416 under the canal into the river channel by a culvert at or near said south line.”
1 It also provided that “ the canal company shall use the said canal dam and waters therein for canal purposes, and the land company shall use the same dam and the water therein, as well as the water passing round the lock at that point, for the propulsion of water wheels; and in consideration further that said canal company shall locate and construct their canal so as to lock down into said canal dam and pass out of the same by a lock in the dam thence to the south line of the lands purchased by said land company of Zenas Kent.”
It further provided that “ when the navigation of said canal shall be interrupted by frost or otherwise said canal company shall have the right to draw from said river so much water as shall be necessary for the purpose of sustaining the levels and preserving the canal, taking due care to keep the lock gate shut and to prevent any unnecessary leakage.”
The canal compauy must locate the canal at a distance west of the east bank of the river “ of sufficient width for a convenient tail race.”
These provisions clearly show that the canal company took only the right to use the property west from a line west of the east bank of the river, and to use the water of the river so far only as needed for the canal. And when the canal company was dissolved, this right must be regarded as abandoned and it reverted to the land company and to its grantees. Corwin v. Cowan, 12 Ohio St. 629; Longstreet v. Harkrader, 17 Ohio St. 28, 29.
This left nothing that the trustees of the canal company could sell and convey, unless perhaps something that they could remove from this property. And the defendant has no rights in this property by virtue of any conveyance or sale by such trustees.
This position is fully sustained in case of McCombs v. Stewart, 40 Ohio St. 647, where, as to a similar conveyance of these same trustees, it is held: “A canal company, in *417 corporated under the act of January 10, 1827 (25 Ohio L. 8), erected across a river a dam . . . causing the water to flow back upon the lands of a proprietor above the dam on the stream. The company owned in fee-simple, by purchase, the land on which the south half of the dam was built, but none of the land on which the north half was built; and conveyed, in fee-simple, to certain mill owners, the land it thus owned, and granted to them and their heirs the privilege of using the surplus water of the dam not required for canal purposes. Held, the right of the company acquired by appropriation, to flow the lands of such proprietor by maintaining a dam. of such height, did not, by virtue of the company’s conveyance and grant to the mill owners, survive and vest in them after the dissolution of the corporation.”
In the ease of Pittsburg and Lake Erie R. R. Co. v. Bruce, 102 Pa. St. 23, as to another such conveyance by the trustees it is held, “ that the company acquired under the terms of the charter a right of way only over the lauds appropriated by them, and that they did not acquire said lands in fee; ” that “ said canal company having become insolvent, and all its property and franchises being sold to a railroad company by order of court: Held, that said last named company could not construct its tracks on the right of way acquired by the canal company without compensation to the owner of the land.” This company had only the right to use the property and the waters of the river for the canal, and after ouster and dissolution neither the company nor the canal remained or existed.
If we disregard the form and averments of the pleadings, whether or not the defendant acquired any rights in this property through the verbal permission of Marvin Kent, is determined by what rights Kent had at that time, long after his deed to plaintiffs.
II. What x-ights havesthe plaintiffs in this disputed prop, erty?
We will not stop to discuss what rights their possession *418 gives them, though this is valuable, especially in connection with their contract and deed. On the trial it was agreed by the parties that “ the Eranklin Land Company owned both sides of the river from the dam above this propei’ty, down to a point below this property upon the river to the south end of this disputed property and including it. And the rights of the land company and their title, as it is conceded, were conveyed . . . from the Eranklin Land Company by sheriff to Zenas Kent, from Zen as Kent to PI. A. and Marvin Kent, from PI. A. Kent by quitclaim to Marvin Kent. And then come the contract and deed from Marvin Kent to Day, Williams & Co. This is the subject of the agreement.” By this written contract Marvin Kent sold to Bay, Williams & Co. “that lot of land and the buildings and improvements thereon known as the Eranklin Glass Works,” and he bounded the property by running the line the other way from what it is run in the deed. The contract is dated July 18, 1864, and the deed is dated March 8, 1868, and was made to carry out the contract. As to this property the deed contains a covenant of general warranty, and described the property, “ with the buildings and improvements thereon, known as the Eranklin Glass Works, situate in said town of Kent, and is known as being a part of township lot number twenty-five (25), in said township of Eranklin, and bounded and described as follows, to wit: Beginning at a point in the west line of Canal street in said town of Kent where a continuation west of the south side of Mill street crosses said Canal street; thence south 18° 15'west seven chains and thirty-one and one-third links to a post in the west line of Canal street; thence north 72° 30' west four chains and twenty-one links to the Pennsylvania and Ohio canal (the east bank of which is hereby understood to be what was formerly the east bank of the Cuyahoga river): thence northerly along the east bank of the Pennsylvania and Ohio canal to a point where the continuation west of said south line of Mill street intersects the east line of said Pennsylvania and Ohio canal; thence north 89° 45' east one chain and fifty- *419 eight links to the place of beginning, containing-acres of land, be the same more or less.”
By the terms of the deed, Rent conveyed to the plaintiffs all the rights he had in this property along the the east bank of the river and up “ to the Pennsylvania and Ohio canal,” and then adds in parenthesis, “ the east bank of which is hereby understood to be what was formerly the east bank of the Cuyahoga river,” and he made no reservation of any part of the bed'of the river or of any water privileges. When the canal was gone there was nothing left but the river.
As early as Gavit v. Chambers, 3 Ohio, 496, this court held: “ In Ohio, owners of lands situate on the banks of navigable streams running through the state, are also owners of the beds of the rivers to the middle of the stream, as at common law.” And the same is true of all streams away from tide-water.
In Benner v. Platter, 6 Ohio 504, this court held: “A call in a survey, for a stream not navigable, is a call for the main branch of such stream, and the boundary is the middle of the stream.”
In Lamb v. Rickets, 11 Ohio St. 311, the court held: “ Where the owner of land is bounded by a stream, he owns to the center of the stream, subject to the easement of navigation.” Here it was subject to the rights of the canal company.
In Walker v. Board of Public Works, 16 Ohio, 540, the court repeats the holding: “ He who owns the land on both banks of a navigable river, owns the entire river, subject only to the easement of navigation; and he who owns the land upon one bank only, owns to the middle of the main channel, subject to the same easement.” And also: “ The legislature can not, by declaring a river navigable which is not so in fact, deprive the riparian proprietors of their rights to the use of the water for hydraulic and other purposes, without rendering them compensation.”
In June v. Purcell, 36 Ohio St. 396, this court went further and held: “ The principle decided in Gavit v. *420 Chambers, 3 Ohio St. 496, that the owners of lands situate on the banks of navigable streams running through the state are also owners of the beds of the rivers to the middle of the stream, as at common law, has become a rule of property, and, irrespective of the question of its original correctness, ought not to be disturbed.” And, in the opinion, White, J., adds: “ To disturb the rule now would be a dangerous tampering with riparian rights.” Such is the law of England and of most of the states.
If the grantor does not intend to convey the bed of the river and the water in the water-course bounding the land conveyed, he must insert in the instrument of conveyance proper words for the purpose of reservation or exclusion; “but in the absence of such words, the bed, and consequently the stream itself, passes by the conveyance.” Aug. Wat., §§ 9 and 17, and cases there cited. Here there was no such reservation or exclusion.
The plaintiffs had all the rights ever held by Marvin Kent in this property, and the defendant took nothing by Kent’s permission.
The court erred in permitting Kent to testify as to any permission he gave the defendant in the property, and it also erred in the construction of plaintiffs’ deed, and of defendant’s conveyance.

Judgment reversed; injunction granted and made perpetual, and cause remanded.