formance of the contract, but this does not relieve the plaintiffs from deducting from the contract price such loss or expense incurred by the defendants by reason of such defects and violation of the contract.

We think it may fairly be assumed that the defendants did sustain loss thereby, and they were entitled at least to an affirmative finding of the amount, if any, thus sustained.

## BOUNDARY LINES FOLLOWING NAVIGABLE STREAMS.

[Circuit Court of Wood County.]

LEWIS OVERLY v. THE STATE OF OHIO.

Decided, May, 1906.

*Venue—Prosecution for Illegal Fishing—In Stream Forming Boundary Line Between Two Counties—Charge of Court.*

1. Where an island in an unnavigable stream forming the boundary line between two counties, lies substantially south of what would be the middle thread of the entire stream, extending only eight or ten feet north thereof, and the channel south of the island is not more than half the width of that on the north, the boundary line follows the thread of the northern channel, and the island lies in the southern county.

2. Venue in a prosecution for illegal fishing on the northern shore of such an island is properly laid in the southern county.

WILDMAN, J. (orally); PARKER, J., and HAYNES, J., concur.

The plaintiff in error, Lewis Overly, was charged and convicted in the justice's court with illegally fishing in the waters of the Maumee river, and the sole question arising here, though presented in different forms, is really one of venue.

It is not contended on behalf of the plaintiff in error that the evidence does not disclose a violation of the law on his part in the act described in the indictment. It is substantially conceded, and the evidence shows that he did fish for black bass in violation of the statute, but it is claimed that he was improperly

prosecuted and convicted in Wood county; that the precise point where he violated the law was within the boundaries of Lucas county, rather than Wood county.

The matter has been very ably argued and numerous authorities have been cited in support of the contention in behalf of the plaintiff in error, and in behalf of the state. It is not my purpose to review these authorities. It is sufficient to say that we are not disposed to disturb the conclusion arrived at by the court below, in his rulings during the trial and the instruction which he gave to the jury as to how the boundary line between Wood and Lucas counties was to be ascertained. He substantially followed the rule of the Supreme Court of Ohio in the case of *Benner's Lessee* v. *Platter et al,* 6 Ohio, 505, following especially the language of Judge Wright, who delivered the opinion, as expressed on page 508 and following. This rule was consistent, also, with the decision of this court in the case of *Ludwig* v. *Overly,* in 19 C. C. R., 107, and also with certain decisions of the Supreme Court of the United States in determining boundary lines between some of the states along the Mississippi river on either side.

The question as presented in the case in the 6th Ohio is not altogether free from obscurity; nor indeed does the principle which governs cases of this character appear very well defined by the adjudication. It has been established by a long course of authority that in Ohio the boundary line between ownerships and probably between political territorial lands of the state where a stream of water is defined as part of the boundary, will be the thread of the stream; in other words, the middle line between the banks, having no regard for the depth of the channel. It is claimed on one side that where an island intersects a part of said line, lying partly on one side of the line and partly on the other, that the line will still follow the middle of the entire stream. The substance of the holding in the case of *Benner's Lessee* v. *Platter et al,* to which I have referred, is that in legal contemplation the main channel, or rather the thread of the main channel of the stream is to be taken in such cases as the boundary line. It is not, perhaps, apparent in that case that the island did intersect the middle line of the

stream, but the court lay down the very broad general proposition, that a boundary on a stream, not navigable, is a call for the channel or middle of the stream—a call for the main stream, not a mere branch or a narrow channel. Judge Wright, in this decision referred to, says that "whether where the tract claimed as an island be one, that is, land permanently surrounded by water, or a peninsula, sometimes insulated by water flowing through a ravine, or into a bayou, makes no difference. The boundary being the main channel or center of the creek, islands, properly so-called, will belong to the proprietor of that side of the channel where the island is found. This disembarrasses the case of the inquiry, whether the disputed land is an island or not"; the discussion suggested growing out of the fact that there was some question in the case whether the particular tract of land called an island was such, or whether it was a peninsula or part of the main land.

In the case at bar, the island which the defendant in error claims shifted the boundary line further north, lies almost south of what would be the middle of the entire stream. It is not contended on behalf of the defendant below, the plaintiff in error here, that more than eight or ten feet in width of the island projected north of this line. The island then was substantially south of what would be the middle thread of the river, and the channel south of the island is not much more than half the width of that on the north. The north channel was properly deemed by the jury to mean the channel the center of which should mark the defined line between the two counties, the boundary line. Considering the case with this view, we are not disposed to disturb the verdict rendered, and the judgment rendered by the court thereon will be affirmed.

*L. F. Conway,* for plaintiff in error.

*J. E. Ladd* and *E. G. McClelland,* for the state.