Hitchcock, J.
The questions arising in this case are of great •interest, inasmuch as the rights of the state, of a county, and of ■individuals, members of an incorporated company, are involved. They are of interest, too, because should they be decided one way, .and should the laws of the state remain unchanged, an end would, in all probability, be put to any further imj>rovement of the state by companies.associated for the purpose of constructing turnpike •roads, and the improvements of that character already made *480 would soon fall into the hands of a few individuals, or possibly of the counties in which such improvements have been made.
As evidence of this, it is not necessary to go beyond the present case. The facts show that a line of road, from seventeen to twenty miles in length, has been constructed in Ross county, at an expense of more than $100,000, of which $42,000 has been paid by the county, and the balance by the state and individuals. By sheriff’s sale, if that sale be valid, the right of receiving the foils upon this road has become vested in the county of Ross for the term of sixty years, to the exclusion of the state and the individual corporators; while the tolls, in all probability, would in two years be sufficient to satisfy the judgments under *whieh [480 the sale was made. These considerations, however, should have no further influence upon the court than-to induce it carefully to examine the questions of law raised and submitted.
This sale has been objected to by the corporation, and has been held by the court of common pleas to be void, and has been set aside. To reverse this decision this writ of certiorari is prosecuted. In the examination of the case, we will consider the objections to the levy and sale as they are presented upon the record.
1. The first objection is, that the right to take toll was not, at the time the levy was made, nor has it since been, subject to levy on execution.
There can be no doubt that the right of taking toll upon a turnpike road is a franchise, and is not at common law, nor by our law regulating judgments and executions, the proper subject upon which to levy an execution. Such interests may be subjected to the payment of debts by proceedings in chancery; and to our apprehension that court alone can give full and adequate relief. Still, the legislature have power to subject such interests to exeutions at law, and it is supposed by plaintiff’s counsel that the franchise of taking tolls upon turnpike roads has been thus subjected in this state. On February 8, 1826, an act amendatory to the act for the regulation of turnpike companies was passed, by which it is claimed this right is conferred.
The two first sections of this act are as follows.
“Sec. 1. In all cases where any judgment,has heretofore been rendered against any turnpike company in this state, which shall remain unsatisfied for fifteen days after the taking effect of *481 this act; and in all cases where a judgment shall hereafter be rendered against any such company, which shall remain unsatisfied for fifteen days after tho rendition thereof, it shall be lawful to issue execution thereon against the goods and chattels of such company, which shall be levied upon and sold as in other cases; but if sufficient goods and chattels can not be found to satisfy such 481] execution, then it shall be lawful *for the officer holding such execution to levy upon the right of such company to take toll at any turnpike gate or gates within the jurisdiction of such officer, which right he shall advertise and sell as personal property; and the person who will pay tho amount duo upon such execution, for the right of using such gate or gates, and of taking tolls at the same, for the shortest time, shall be the purchaser.
“Sec..2. That tho officer making sale of the right to take toll at any gate or gates aforesaid, shall give to the purchaser a certificate thereof, which certificate shall be sufficient to authorize the purchaser to take possession of such gate or gates, and to hold the same during the time for which the same was sold; and thei person so purchasing as aforesaid shall have the full right to demand and receive the same toll of and from all passengers passing through said gate or gates, which shall have been established and! posted up by said company; and during the possession thereof, such purchaser or his agent shall conform to all the rules and regulations of such company in the same manner as required of tho gatherers of said company, excepting that such purchaser shall hold for his own use all tolls collected at such gate or gates, for and during the time for which such purchaser purchased tho same; provided, however, that whenever a judgment is entered against any turnpike company,-it shall be the duty of the clerk or justice of the peace, before whom such judgment was obtained, to send a bill stating the amount of the judgment and costs to some one of the persons employed in receiving the tolls at some one of the gates on such road, within thirty days after such judgment was rendered.”
There can be no doubt but that this act makes ample provision for the sale of the franchise of taking toll upon execution. This is not denied by the counsel for the defendant; but they claim that the law has been virtually repealed so far as relates to turnpike companies incorporated since its passage. It is not pretended that it has been expressly repealed, but that it has been *482, 483 done by implication. This argument is urged with, much force and ability. It is a principle well' established, that *where [482 a statute is passed which conflicts with, contradicts, or is inconsistent with a former statute, the latter must have effect. If the two can not stand together the former must give way; it will be considered as repealed. It would, however, be a little extraordinary to hold that a general law of the land was repealed by an act of incorporation. Still, if the act of incorporation contains provisions contrary to the general law, that general law being previous in date, can not bo applied to the corporation thus formed.
At the time of the passage of the law of 1826, above cited, although there were many turnpike roads upon paper within the State of Ohio, there had in fact beeu but two or three constructed or been put in a way of being constructed. It was not until after the passage of the act of March 24, 1837, “to authorize a loan of credit, by the State of Ohio, to railroad companies, and to authorize subscriptions, by the state, to the capital stock of turnpike, canal, and slack-water navigation companies,” that the people of the state engaged to any considerable extent in constructing such roads.
In order to show that the act of 1826 has been repealed, só far as relates to the Chillicothe and Milford Turnpike Company, the charter of that company is referred to, and several things noted as being inconsistent with this law. It is said, that by the act of 1826 the purchaser “shall have full right to demand-and receive the same toll, of and from all passengers passing such gate or gates, which shall have been established and posted up by such company." That is, the purchaser shall have the same tolls which the company shall have established and posted up in pursuance of section 17 of the act to which this is an amendment. By a provision to section 10 of the act of incorporation of this company, it is declared “that the legislature may, at any time after the expiration of five years from the completion of said road, make any alteration in the rates of toll aforesaid.” It is supposed there is an inconsistency in these two provisions.
If the legislature intended, by the act of 1826, to confer uj>on “he purchaser all the rights of the corporation over that *part [488 of the road, on which by his purchase he had the right to take toll, and to fix the rate of toll for the whole period of time (or which the purchase was made as it had then been fixed by the *484 company, here would bp an inconsistency. But if the intention was merely to confer the same right to take toll as was before tho purchase vested in the company, then the inconsistency would be removed. This I suppose to have been the real intention of the law, although it is not clearly expressed. Give the law this construction, and all the apparent inconsistencies between it and the act incorporating the Milford and Chillicothe Turnpike Company will be removed. The right to take toll, if it would cease had there been no sale, and had the right remained in the company, will cease although that right is transferred to the purchaser. If, the road being out of repair, the company could not take toll, neither can the purchaser. If, the road not being finished within a specified time, the right to take toll by the company will be forfeited, so, under similar circumstances, will the right of the purchaser be forfeited. To give any other construction to the law would be to hold that a purchaser at sheriff’s sale might acquiro-a better right or title than had the judgment debtor.
2. The next reason assigned for setting aside this sale is, because the State of Ohio was, at the time of said levy, and still is, the owner of a moiety of the stock of said company.
This objection is based upon the proposition that, whatever may be the situation of other companies, the law of 1826 is not in force against those companies in which the state is a stockholder.
There is much difficulty in disposing of this objection. The state, as such, can not be subjected to an action at the suit of one of its citizens, and of course its property can not be subjected to an execution, for there can be no execution unless there is first an action and a judgment. But if the state becomes interested as a stockholder in a corporation, such interest will not protect the corporation from a suit, nor will it protect the property of the corporation from execution. But the state may lend its aid to a corporation 484] under such laws *and under such circumstances, that its interests in the corporation shall not be subject to the ordinary process of execution. If the state becomes interested in a corporation, it must be in pursuance of laws previously enacted, and those laws are of the same obligatory force as any other laws passed by tho legislature. They must be executed, and if they can not be carried into execution without interfering with pre-existing laws, those pre-existing laws must so far be considered as repealed.
In the law authorizing the loan of the credit of the state to rail *485 road companies, and authorizing a subscription of stock to turnpike, canal, and slack-water navigation companies, great care has been taken to protect the interests of the state, and to secure to it its dividends in proportion to the amount of money paid upon its stock. No advance of money is to be made on turnpike stock until an equal amount has been previously advanced by individual stockholders. No part of the money advanced by the state is to be applied “ other than in the actual construction of such road,” and the necessary fixtures, right of way, etc. By an amendatory act passed on March 21,1841, it is made the duty of the board of directors of each and every turnpike road company, annually, or semi-annually, as the ease may be, to declare a dividend of all tolls and fines received upon said road, first deducting “from the gross amount of receipts, the amount actually expended for the necessary and permanent repairs of such road, if the whole of said road be in public use, and if not, then the amount so expended in repairs of such portion as was in actual use during the time such tolls or other revenues were accumulated.” No provision is made that any deduction shall be made for the payment of debts, for repairs upon any other parts of the road except such as were in actual use, nor for expenses in further extending the road.
In section 2 of this act, it is provided that any and every company upon the use of whose works revenues have accumulated, the directors of which shall have failed to make dividends, or report the same, or when the *tolls or other revenues shall have [485 been appropriated to the further completion of the road, shall make out and certify to the auditor of state, the amount of moneys so received, after deducting the amount expended in necessary repairs, “upon such part of such works in public use.” It is then made the duty of the auditor to draw upon the company for the amount of dividends due the state in proportion to its stock, whether the dividends are made or accrue under the first or second section of the act.
And it is further provided that if any company shall fail to make report in accordance with sections 1 and 2 of the act, or shall refuse to pay any draft drawn by the auditor of state, such company shall forfeit and pay for every such offense the sum of $500, to be recovered by action of debt.
It is clear from these several provisions of law, that the directors of a turnpike company in which the state is interested, can *486 not appropriate the tolls of the company to the payment of its debts in such manner as to prevent the state from receiving its dividends. And it certainly would seem to be inconsistent that that should be done indirectly through the instrumentality of the law of 1826, which can not be done directly. If that law is in force, through its instrumentality the state may be, and in all probability will be, deprived not only of these dividends, but from the receipt of anything in return for the large amount of money invested in turnpike companies and in -kindred associations.
It is proper here to refer to another statute, and that is the law of March 28, 1840, “ to regulate the receipt and disbursement of the canal fund.”
Section 2 of this act provides : “ That all moneys arising from tolls and water-rents, all dividends arising from stock in incorporated companies of, or upon public works, wherein the state is a stockholder, and all revenues arising from taxation for canal purposes, or purposes of public improvements, shall be in like manner certified and paid into the state treasury, and charged to the 486] treasurer as a ^separate fund, and such fund, with the exception of so much of the revenue arising from taxation as may be appropriated to the sinking, fund, shall, only be drawn lor the purpose of paying repairs upon the canals or other public works, the property of the state, and for the payment of interest on the public debt; the purpose of all dralts being distinctly set forth upon the face thereof.”
If the law of 1826 is in force, the provisions of this section of the law may, in part at least, be defeated. By this section the revenue derived from turnpike stock is expressly appropriated to the payment of the interest of the public debt. By operation of the law of 1826, it may be diverted from that object and appropriated to the payment of debts due from turnpike companies.
From a careful examination of the acts before cited, and comparing them with the'law of 1826, I incline to the opinion that this latter law must be held to be inoperative as to those turnpike companies in which the state is-a stockholder, but as a court, we are not prepared so to decide without further reflection. ■ It is a doubtful question. Those doubts might be easily resolved or removed by that branch of the government whose duty it is, by good and wholesome- laws, to protect as well the interests of the .state as of the citizens of the state.
*487 3. The third objection to this sale is, that no bill stating the amount of said judgment and costs was ever sent by the clerk of said court, or any one else, to some one of the persons employed in receiving the tolls at some one of the gates on said road, within . thirty days after the judgment rendered.
Whether this objection is well taken, must depend upon the proper construction of. the statute of 1826. By this statute an extraordinary mode of proceeding is authorized to enable creditors to enforce their claims against turnpike companies — a mode of proceeding entirely unknown to the common law, or to any previous practice of this state. It is therefore proper that any person who would avail himself of the provisions of the act should be held to a strict compliance with its requisitions.
*The act provides that in all cases where a judgment has [487 been rendered, or shall hereafter be rendered, against any turnpike company in this state, which shall remain unsatisfied for fifteen days after the passage of the act, or for fifteen days after the ren- ■ dition of the judgment, as the case may be, it shall be lawful to issue execution thereon against the goods and chattels of such company, which shall be levied upon and sold as in other cases, So far there is no innovation. Without this law the goods of the 'company might have been seized and sold upon execution. The statute next goes on to provide, that if there be no sufficient goods and chattels, then the execution may be levied upon the right of the company to take tolls at any turnpike gate or gates within the jurisdiction of the officer, who shall advertise and sell such ■right as personal property, and the person who will pay the amount due upon the execution for the right of taking tolls for ■ the shortest time, shall be the purchaser; and the officer making the sale shall give to the purchaser a certificate of the sale, which shall be sufficient to authorize him to take possession of such gate or gates, and hold the same, and have the right to demand and receive the tolls, etc., “provided however, that when any judgment is entered against any turnpike company, it shall be the duty of the clerk, or justice of the peace before whom such judgment was obtained, to send a bill, stating the amount of judgment and cost, to some one of the persons employed in receiving the tolls at some one of the gates on such road, within thirty days after such judgment is rendered.”
On the part of the plaintiff it is contended that this proviso is *488 merely directory. That it imposes a duty upon the clerk, or justice of the peace, which they are bound to perform, and that the neglect of these officers ought not to operate to the injury of the purchaser. • This would be a good argument if the attempt was to impeach the sale collaterally, and the purchaser was á stranger. This is, however, a direct attempt to set aside the sale, not collaterally to impeach it, and the purchaser is one of the judgment creditors at whose suit the property was sold. The argument is 488] not without, force as the *case is now presented. It is based upon a supposed incongruity in the law upon any other construction, because it is said that thirty days are allowed within which to give this notice; still, the execution may be levied after fifteen days, and the right sold in twenty-five. ¥e apprehend, however, that this proviso is in the nature of a condition. It must be complied with before the right to levy upon the right to take tolls attaches.
The judgment is perfect without this notice. The judgment creditor may have execution, and whether there has been notice or not, it may be levied upon the goods and chattels of the defendants. But if the intention be to acquire the privilege of selling the right to take tolls, the terms of the proviso or condition must be complied with. A bill, stating the amount of judgment and costs, must be sent to one of the persons employed in receiving tolls at some one of the gates. It must bo done within thirty days after the rendition of the judgment, otherwise the privilege of levying upon the franchise is forever lost. It may be done immediately upon the rendition of the judgment, and then the execution can be levied upon the franchise at the end of fifteen days, and the franchise itself may be sold at the end of twenty-five days. There is no incongruity in this.
But it is said that, if the clerk or justice of the peace should fail to send this bill, the judgment creditor may sustain a loss. I apprehend, however, that the plaintiff’s counsel are mistaken'as to the duties of the clerk or justice of the peace. True, it is made the duty of these officers to send this bill. So it is the duty of these officers to issue mean and final process, but they are not bound to do it, neither ought they to do it without the direction of the party interested. Neither are .they bound to send this bill without the direction of the party interested. I t is for the judgment creditor to see that the thing is done. If, upon application, *489, 490 the clerk or justice of' the peace should refuse to make out the bill, they would be liable in the same manner they would for refusing to issue executions, or to perform any other minsterial act. *If there were any judgments in existence at the time of [489 the passage of the act, the proviso does not affect them. It manifestly was intended to apply only to the judgments which should be rendered after the act took effect.
In the opinion of the court, the third objection to the levy and sale was well made, and properly sustained by the court of common pleas. No bill of the judgment and cost having been furnished as required by the law, the franchise of taking toll could not be levied upon and sold to satisfy this judgment, and never can be.
4. The fourth objection to the sale is on account of the agreement set forth in the bill of exceptions between the judgment creditors and the commissioners of Ross county, in pursuance of which the purchase was made.
In the opinion of the court, this objection is equally fatal with the last. In sheriffs’ sales, everythingshould be fair, and any agreement between two or more to prevent competition, will avoid such sale, provided any one engaged in such combination becomes a purchaser. ¥e have no doubt that the agreement in this ease was of that character. The object is explicitly declared to be, to prevent the interest from falling into the hands of an individual. The. debt of the creditors was not satisfied by it. As to them, it is only a change as to the body to whom they give credit. Previous to the sale, they had given credit to the turnpike company, subsequently to the county of Ross, with a pledge, however, that two-thirds of toll arising from the road should be appropriated to the payment of their debts. It was, in truth, a cunningly devised scheme, by which one of the stockholders of this company was to get rid of her co-stockholders, and appropriate their joint labors and expenditures to her own benefit. A sale made under such circumstances can not be sustained.
It is unnecessary to examine the other three objections which are made to the sale in this case. It may be proper, however, to say that we see nothing in them which would- induce us to hold that the sale was void, had it been otherwise conducted in conformity with law.
*The order of the court of common pleas is affirmed with [490 costs. Judgment affirmed.