Wood, J.
It is very clear if the Hamlin lot contained fifty-two acres, when conveyed to the complainant in exchange for lot No. 216, the contract is satisfied by merger in the deed, and the complainant has no rights to enforce in the case at bar.
It was the manifest intention of the parties, as arising upon the face of the agreement, that no more than the quantity, fifty-two acres, was, in any event, to be conveyed by the respondent, unless contained in the Hamlin lot; but it was supposed by the parties there was not so much in that tract, and the deficiency not being ascertained, the proviso was inserted in their agreement, “ that if there should be more than fifty-two acres in the Hamlin lot and out-lots, the excess was reserved to the respondent.”
It is admitted that if the line of the Hamlin lot, on its northern boundary, is extended so as to cover the alluvial formation to low-water mark, the complainant has his fifty-two acres in that lot. By a survey made under an order of court, the lot, without the alluvion, contains 42.68 acres; with it, 52.25.
It is a well-established principle that formations, by slow and gradual accretion, belong to the owner of land, when made by a stream forming Ms boundary, and opposite thereto; and whether those slow and gradual accretions were those of the *respondent, when he conveyed the Hamlin lot, depend entirely on the fact whether the Tuscarawas river was his boundary, where these deposits were made. This question must, therefore, be ascertained. The deed of Moore and wife to Joseph Rickets is the oldest deed, and the one on which both the parties rely, and it describes the tract by metes and bounds as follows: “Beginning on the south bank of the Tuscarawas river, where the line between t.ho first and second quarters of said fifth township intersects the same, etc.; thence south, with the division line of the first and *269 second quarters, etc.; thence east, etc.; thence north, etc.; to the south hank of the Tuscarawas river, from which a maple, four inches in diameter, bears south, etc.; thence, with the courses of the south bank of the Tuscarawas river, to the beginning.” As counsel suggest, in argument, it commences with the bank, returns to the bank, and thence, with the courses of the bank, to tho beginning. Not from, to, or with the bank, as it was twenty-five or thirty years ago, but as it was when the Hamlin tract was conveyed to the complainant; to the bank, with it, and from it, as the lines of the survey must now be extended, so as to include the alluvion to low-water mark.
The counsel for the defendant contend that from, to, and with the hank of a stream, as here expressed, does not extend to low-water mark, but leaves a narrow strip between low-water mark and the break of the bank, not covered by the deed, to which the alluvion attaches, and therefore belongs to Moore, or the original owner. If so, it is not probable the parties had any such intention. The Tuscarawas, around the north end of the Hamlin lot, is a curve, and a curved line, with the course of the river, would be inconvenient in other respects, as well as by depriving Hamlin of access to the river, while the strip not conveyed, as it then was, if the counsel for the defendant is right in his conclusion, could have been of no use to any other person. We need not, however, elaborate this principle. It has been done by those who have gone before us, and, as we think, the rule, as there laid down, ought to be adhered to.
*In the case of the Lessee of McCulloch v. Aten, cited by counsel, 2 Ohio, 307, the court say: “When a deed calls for a corner standing on the bank of a creek, thence down said creek with the several meanders thereof, the boundary is the water’s edge at low-water mark. In this case a white oak called for by the deeds was found on the ground, about four rods from the channel of the creek, and about one rod from the top of the bank.”
This authority settles this case so far that it is clear the alluvion attaches to and forms a part of the Hamlin lot; but the west line of this tract of Hamlin divides the quarter township, and cuts off a part of this alluvion, which, it is admitted by counsel, does not belong to this tract; the quantity is 3.97 acres. The plaintiff’s counsel claim, however, that the line of the Hamlin lot should be *270 extended to the center of the river, and, computing the quantity of land between low-water mark and the center of the river, there is then more than sufficient to make up the number of acres called for by the agreement. In the case of Gavit v. Chambers, 3 Ohio, 495, it is said: “In Ohio, owners of land situated on the banks of navigable streams, running through the state, are also owners of the beds of the river to the middle of the stream, as at common law, subject only to the easement of navigation.” This is undoubtedly correct; and in Benner’s Lessees. Platter et al., 6 Ohio, 504, it is said a call for a stream, not navigable, is a call for the main branch of such stream, and the boundary is the middle of the stream. But, nevertheless, it is certain, in the computation of the number of acres in a survey, for that purpose, the stream, at low-water mark, is the boundary. This result requmes of the respondent, to satisfy1 the terms of his agreement, to convey to the complainant, from the two out-lots, sufficient to make up the deficiency in the alluvion, and a decree may be so entered.
Decree for complainant.