McBurnie
vs
Overstreet.

---

ΕJECTMENT.

*Case* 73.

January 29.

Case stated.

## McBurnie *vs* Overstreet.

APPEAL FROM THE JEFFERSON CIRCUIT.

*Executions. Levies on real estate. Sheriffs.*

JUDGE BRECK delivered the opinion of the Court.

THIS was an ejectment brought by McBurnie against Overstreet, for a house and lot in the city of Louisville. Two trials were had; on the first a verdict was found for the plaintiff and a new trial awarded. On the second, the jury, under the peremptory instruction of the Court, found a verdict for the defendant, and judgment thereon having been rendered against the plaintiff, he has appealed to this Court.

In support of his claim, the plaintiff, upon the trial, read in evidence to the jury, the record of two judgments, executions and returns thereon, one in favor of Carl against Johnston, &c., and the other in favor of McBurnie against Harrison, &c. He also read a deed from Ronald, as the deputy of Pomeroy, former Sheriff of Jefferson county, for the premises in contest. The deed bears date in February, 1842, and purports to have been made in virtue of a sale on the first Monday in February, 1841, under the executions of Carl and Mc-Burnie. The original judgments had been replevied with Overstreet as security, and the executions under which the sale was made, issued upon the replevin bonds.

Carl's execution, according to the return, was levied upon the property in controversy by Ronald as a deputy, on the 9th October, 1840, McBurnie's on the 9th

December, 1840. It was proved that Pomeroy was the Sheriff of Jefferson county at the date of the executions and up to the first Monday in January, 1841, when his term expired, and that during that period Ronald was his deputy.

Ronald, the deputy, being introduced by the plaintiff as a witness, stated that the two executions came into his hands as a deputy Sheriff of Pomeroy, and that the returns thereon contained a true history of his action in regard to them. That each execution was levied before the return day. That the only entry or endorsement made upon Carl's execution until after the sale, was, "levied October 9th, 1840;" the return day being the day following. That he made that portion of the return upon the execution when he levied it, and the residue after the sale. His testimony, as detailed in the bill of exceptions taken upon the last trial, now more particularly under consideration, in regard to any other written memorandum of the levy of Carl's execution made before the sale, or in reference to any other particular act done by him in making or as constituting the levy, is wholly unsatisfactory. He proves that he advertised to sell the property on the first Monday in January; when, by consent of parties, the sale was postponed till the February Court, at which time it was made and McBurnie became the purchaser. The property was appraised at $10,000, and sold for $376 69, being the amount of the two executions. The executions were not returned to the office till January, 1842. The defendant was proved to have been in possession at the time of the service of the declaration in ejectment. Other testimony was introduced, but which, we think, has no bearing upon the questions upon which the case turns.

In view of the state of case thus presented, the Court below instructed the jury, that upon the evidence they ought to find for the defendant. <span>Instructions of Circuit Court.</span>

The propriety of this instruction depends upon whether the testimony before the jury was or not, competent and sufficient to show a valid levy of the executions, under which the property had been sold. <span>Question for adjudication, was the levy of the execution valid?</span>

In the examination of this question it will be important to enquire as to the effect of the returns upon the executions and the recitals in the deed, and to what extent, if any, they were entitled to consideration as evidence. The recitals in the deed state in general terms, that the executions were levied. The returns upon the executions are full and explicit as to the time of the levy and sale, and are signed by Ronald as deputy Sheriff for Pomeroy, Sheriff of Jefferson county.

But as the sale was made after the Sheriff went out of office, it is manifest, apart from any other evidence, that the returns were also made after that time. The levy and sale are embraced in the same return and constitute, therefore, but one return. The executions were not returned to the office for more than a year after the return days, and after the term of the Sheriff expired, and nearly a year after the sale. Whether a return made under such circumstances should be regarded as an official return, and consequently as evidence of the action of the officer as therein stated, is a question which has not, to our knowledge, been decided by this Court. The law makes it the duty of the officer to return every execution which comes into his hands, to the proper office, together with his action, or with the proper return thereon. And although he may not return it according to its direction or within the time required by law, it is, nevertheless, his duty to return it, even if it should remain in his hands after the return day, and after his office expires, and to return upon it the truth of the case. The Court is, therefore, of opinion that the returns upon the executions in question, are *prima facie* evidence of both the levy and the sale, but subject to be impeached and falsified by extrinsic testimony.

*The return of a Sheriff upon an execution, of a levy made before and a sale after he goes out of office, is prima facie evidence between the parties.*

The question then arises, whether the testimony before the jury showed, and so conclusively, that there had not been a valid levy of both executions, as to authorize the instruction of the Court to find for the defendant. Ronald says that the only portion of the return upon Carl's execution, made during the life of the execution, was "levied October 9th, 1840," and that *that* entry was not signed by him officially or otherwise.

We cannot admit that the entry or endorsement thus made, constituted a levy upon the house and lot in contest, nor was it evidence that such a levy had been made. Had the execution been returned to the office with that entry alone upon it, could a *venditioni exponas* have been issued, directing the sale of "Overstreet's house and lot on the corner of water and second streets in Louisville?" We think not. But the Sheriff himself did not regard that entry as a levy. He speaks of the entry and levy as separate acts. He does not state in what the levy consisted. It cannot be inferred from his testimony, that he made, during the life of the execution, any other memorandum, official or private, evidencing a levy, except that made on the 9th October. Nor does he state any other particular act as constituting the levy.

In regard to goods and chattels, the doctrine seems to be, that it is competent to prove a levy by parol, and that it is not indispensible to its validity, that the officer should make any entry or return thereof upon the execution or otherwise.

But to constitute a valid levy upon such property, the general rule is, that the officer must do such acts as would subject him to an action of trespass but for the protection of the execution. He has a right to take the property into immediate possession, or he may leave it in the possession of the debtor or any other person, but the person holding possession after the levy, would hold it as the bailee of the officer. But in regard to real estate, the levy does not divest the debtor of either title or possession. He is only divested of title by the deed of the officer to the purchaser, who is compelled to resort to ejectment for the possession. Still, we are of opinion that the fact of a levy upon real estate may be established by parol, although it is undoubtedly the duty of the officer to make specific entry of the levy, when made upon the execution, and to return it according to its direction. Such entry and return furnish the best and most available evidence of the acts of the officer, and afford the surest protection to purchasers and all parties concerned. They are more

To constitute a valid levy of an execution on personal property, the Sheriff must do such acts as would subject him to an action of trespass, but for the protection of the execution, and may take the possession; but of land he cannot take the possession in virtue of his levy. It may be proved by parol, though it is the duty of a Sheriff to endorse his levy when made and sign his name officially to it. Some open, express, unequivocal action should take place; it should not rest alone in the breast of the officer, whether there was or was

McBURNIE
vs
OVERSTREET.

not a levy, or
whether it was
upon one piece
of property or
another, or upon
the property of
one defendant or
another.

especially and peculiarly necessary and proper, where the right of the officer to act under the execution after the expiration of his term of office, depends alone upon his official action while in office.

No such entry or return was made by the officer in this case. It is true, he says he levied the execution of Carl on the 9th October, 1840, but he does not state how he levied it. He proves no particular, specific act, which would constitute a valid levy. If in regard to personal estate, the levy depends upon acts of the officer, which would constitute him a trespasser but for the shield of the execution, certainly in regard to real estate, some open, express, unequivocal action should be required. It should not rest alone in the breast of the officer, whether there was or was not a levy, or whether it was upon one piece of property or another, or upon the property of this or that defendant.

To constitute a
valid levy on real
estate, "the offi-
cer should either
go upon the pre-
mises and make
an actual levy,
or he should see
the defendant in
the execution or
his agent, and
obtain his con-
sent that the ex-
ecution be levied
upon the estate,
or he should see
and apprise the
defendant or his
agent, of the par-
ticular estate
upon which he
designed levying
and then make
an official and
specific entry
upon the execu-
tion or a paper
thereto attached,
of the estate and
levy" in every
case.

But we have had considerable difficulty in determining what act of the officer should be deemed indispensable to constitute a valid levy of an execution upon real estate. No uniform rule or practice seems to have prevailed upon the subject. Our conclusion is, that the officer should either go upon or to the premises, and make an actual levy—or that he should see the defendant in the execution or his agent, and obtain his consent that the execution be levied upon the estate sought to be subjected—or that he should see and apprize the defendant or his agent, of the particular estate upon which he designed levying, and should thereupon make an official and specific entry upon the execution, or upon a paper thereto attached, of the estate and levy. In the two first modes, it would also be the duty of the officer to make the entry upon the execution.

The testimony conduces to prove that no levy was made by the Sheriff in this case, of the Carl execution, in either of the modes indicated. But as the jury might have inferred from his statement, that he levied the executions as stated in the returns thereon, that he had done other acts in making the levy, than he specified, and such as would constitute a legal and valid levy,

the Court, we think, erred in the peremptory instruction to the jury to find for the defendant.

It remains to inquire whether the Court erred in setting aside the first verdict, and awarding a new trial.

The testimony upon the first was substantially the same as upon the second trial, except as to the testimony of Ronald, the Sheriff, which in some respects is more certain and specific upon the last trial. Upon the last trial, he says he has no recollection of Overstreet's directing him to levy the Carl execution upon the property in contest. Upon the first trial he is not so explicit upon that point, although we think it clearly to be inferred, that the conversations he says he had with Overstreet upon the subject of the levy, were after he received the execution of McBurnie, which was a month after the return day of the execution of Carl.

This witness, it will be recollected, was introduced by the plaintiff, and obviously for the purpose of proving the levy of the executions under which the sale was made; and the presumption is, he proved all his particular acts, touching, or as constituting the levy, which he recollected. He says, in general terms, he made the levy, but in what act the levy consisted, he is entirely unsatisfactory. He does not prove that he went upon the premises, nor do we think it can be fairly inferred from his whole evidence, that he had any directions or consent from Overstreet during the life of the Carl execution, to levy it upon the property in contest. The presumption is, he did nothing more in regard to the levy, or in making it, than he has stated, and consequently that he made no valid levy. In this view of the testimony, therefore, we should be disinclined to disturb the judgment of the Court in granting a new trial.

But upon the first trial, the Court declined giving the instructions as asked by either party, and in lieu thereof undertook to instruct the jury as to the whole law of the case.

The testimony of Ronald conduced to prove that he had at the time made some memorandum of the levy of the Carl execution. And probably in reference to that

fact, the Court gave the second instruction, from which we think it might be inferred by the jury, that to constitute a valid levy, a written memorandum by the officer, describing the property, whether made upon the execution, or attached to it or otherwise, would alone be sufficient. Such a memorandum as we have seen, would not amount to a valid levy, and the jury may, therefore, have been misled by the instruction.

Upon the whole, we think there was no error in setting aside the first verdict, and granting a new trial.

The judgment upon the last trial is reversed, and the cause remanded, that a further trial may be had.

*Duncan* for plaintiff; *Pirtle & Speed* for defendant.