SAMUEL MINOR *v.* FREDERICK F. SMITH ET AL.

A sheriff, with a *fi. fa.* against a church corporation, enters the body of a church building, on a week-*day*, while the sexton is in the bell-*room* ringing the bell, and there, in the presence of no one, in view of an organ in the gallery, enters on the back of the execution a levy on such organ, and then retires without seeing the sexton, who is unaware of his presence—the sexton continuing in control of the building and its contents, and in possession of the keys, as before ; and prior to the disclosure of such levy, either to the public or to the officers of the church, a chattel mortgage of the organ is duly executed to and filed by a *bona fide* creditor of the church corporation. Held, that this was not a valid levy as against the mortgagee.

APPEAL. Reserved in the district court of Erie county.

The case is stated in the opinion of the court.

*Samuel Minor*, plaintiff, in person :

The facts do not show that a valid levy of execution was made, and continued as against this plaintiff, a *bona fide* mortgagee ; and the burden of sustaining the levy is upon the defendant. *Green* v. *Burke*, 23 Wend. 491; *Dresser* v. *Ainsworth*, 9 Barb. S. C. Rep. 620 ; *Ray* v. *Harcourt*, 19 Wend. 495; *Van Wyck* v. *Pine*, 2 Hill, 666; *Price* v. *Shipps*, 16 Barb. S. C. Rep. 585 ; *McBurney* v. *Overstreet*, 8 B. Mon. 300 ; *Beekman* v. *Lansing*, 3 Wend. 446, 450 ; *Camp* v. *Chamberlain*, 5 Denio, 198 ; *Haggerty* v. *Wilber*, 16 Johns. 287; *Barker* v. *Binninger*, 4 Kernan (14 N. Y.) 278; Nash's Pl. & Pr. 596; Gwynne on Sheriffs, 211 ; *Fowble* v. *Rayberg et al.*, 4 Ohio Rep. 45, 55 ; *State for use of Smith* v. *Fuller et al.*, 14 Ohio Rep. 545.

*E. B. Sadler*, for defendant :

The levy is a valid one ; and, being good against the judgment creditor, it is good against subsequent purchasers under him. *Butler* v. *Maynard*, 11 Wend. 548; Gwynne on Sheriffs, 210, 211, 212 ; 23 Wend. 270–279, 490 ; 4 Kernan, 277–278 ; 2 Hill, 666.

BRINKERHOFF, J.—This case, commenced the 22d of July, 1859, in the common pleas of Erie county, was appealed to the district court of that county, and there reserved for decision in this court.

The plaintiff files his petition, claiming to be, and is admitted to be, the mortgagee, under a chattel mortgage, duly executed and filed according to the requirements of the statute, of an organ belonging to the First Presbyterian Church of Sandusky, against the defendant, Smith, sheriff of Erie county, and the other defendants, judgment creditors of said church, praying a perpetual injunction to restrain the defendants from proceeding to sell said organ, under a levy claimed to have been made by said Smith by virtue of an execution in his hands, in favor of the other defendants and against the said church.

The parties have filed a stipulation, waiving all question

as to the remedy by injunction, and submit the case upon its merits, on an agreed statement of facts, including a deposition of the defendant, Smith.

The case confessedly turns entirely on the validity of the defendant's levy.

The agreed statement, with Smith's testimony, shows this state of facts: ·

The defendant, Smith, as sheriff, having two writs of *fi. fa.* in his hands· against the church, and in favor of the other defendants, on a week-day, and late in the afternoon, but before dark, of the day preceding that on which the plaintiff's mortgage was executed and filed, took one of the writs of execution with him, leaving the other behind in his office, and went alone to the church building in which the organ was. The door of the church was open; the sexton was in the bell-room ringing the bell; but no other person was in or about the church. The organ was in the gallery. The sheriff, Smith, entered the body of the church below, and there, in view of the organ, but without being in reach of it, made a memorandum of a levy on the back of the execution. He did not see or speak to the sexton, nor was the sexton aware of his presence. He then left the church, proceeded to his office, and made a like memorandum on the back of the other writ of execution. It does not appear that any person, other than the sheriff himself, was, up to this time, aware of what he had done. He says he intended to inform the trustees of the church of the fact of his levy as soon as he saw them; but did not see or inform them of it until several days afterward; and the sexton continued in charge of the building and its contents, locking the doors after each service, as before. The plaintiff, before taking· his mortgage, which was for a precedent debt, was aware that the execution was about to issue, but was not aware that any levy had been made or attempted.

Was this a valid levy?

Supposing the authority of the officer to make the levy to be complete, the question as to what constitutes a valid levy of personal property seems to depend upon the combined

result of the circumstances of each particular case, rather than upon the existence or non-existence of any one particular circumstance which properly may, or usually does, accompany evidence, or form a part of the act of making a levy. The law has prescribed to the officer no special forms or detailed method of procedure.

Thus, the making of an inventory, though it ought usually to be done to afford the means of identifying the property levied on, is not always essential. So with an actual manual touching, or removal, of property levied on; especially when the articles are numerous or ponderous. So witnesses to a levy are not essential; nor public avowal or proclamation of a levy; nor information of the facts to the defendant in execution. Any one, and perhaps all, of these circumstances may, in particular and possible cases, be wanting, and yet there may be a valid levy.

Bouvier defines a levy on personal property thus: " In order to make a valid levy on personal property, the sheriff must have it within his power and control, or at least within his view; and if, having done so, he makes a levy upon it, it will be good if followed up afterward within a reasonable time, by his taking possession in such manner as to apprise everybody of the fact of its having been taken in execution;" and cites *Wood* v. *Vanarsdale*, 3 Rawle's Rep. 401. In that case, a memorandum of a levy on a stock of goods in a store was made by the sheriff in the store, and with full knowledge of the defendant in the execution; and the levy was held good as against an assignee for the benefit of creditors, under an assignment made after the levy, but before manual possession taken by the sheriff. And although the case was properly decided, yet the definition extracted from it seems to me to be defective. I would define a levy of personalty good as against a subsequent purchaser or mortgagee, to be either an actual and continued manual seizure of the property by the officer, when such seizure is practicable, or if the property is within his view and power of control, the making by him such distinct, open and unequivocal assertion of dominion over it as the nature and situation of the property

and the surrounding circumstances will admit, or as the judgment debtor may recognize and acquiesce in, and constituting such an interference with the possession of the property, either actual or constructive, that trespass would lie against him but for the protection afforded by his writ. And this, it seems to me, is the sum of the authorities bearing upon the subject. *Trovillo* v. *Tilford*, 6 Watt's Rep. 468; 1 Wash. C. C. Rep. 29; *Ray* v. *Harcourt*, 19 Wend. 495; *Beekman* v. *Lansing*, 3 Wend. 446; *McBurney* v. *Overstreet*, 8 B. Mon. 303; *Van Wyck* v. *Pine*, 2 Hill's Rep. 666; *Camp* v. *Chamberlain*, 5 Denio, 198; *Dresser* v. *Ainsworth*, 9 Barb. S. C. Rep. 620; *Price* v. *Shipps*, 16 Barb. S. C. Rep. 585; *Gibson, Stockwell & Co.* v. *Chillicothe Bank*, 11 Ohio St. Rep. 311; *Pugh* v. *Calloway*, 10 Ohio St. Rep. 488; Gwynne on Sheriffs, 211, 212.

*Beekman* v. *Lancing*, above cited, was a case in which a sheriff had gone to the house of the defendant in execution with the execution, and, in some way not distinctly stated, made a levy without apprising the defendant of his errand, the defendant not being absent or inaccessible. The levy was held bad as against a landlord who, under the statute of New York, claimed a lien on the goods for rent accruing subsequent to the pretended levy. Marcy, J., says, the acts of the officer in making a levy, " should be public, open and unequivocal; and nothing should be done by him to cast concealment over the transaction." * * * " The sheriff erred in supposing that merely going to the house of the defendant with an execution in his pocket, without even apprising the defendant that he had come to make a levy on his goods, was an actual and *bona fide* levy, defeating the rights of the landlord. A secret levy on goods left on the premises in the possession of the defendant in the execution, and no act done to give notoriety to it," is bad. And in *Green* v. *Burke*, 23 Wend. 493, Cowen, J., speaking of levies made otherwise than by actual manual change of possession, says that " *speaking* is always an important part of the *res gestæ* which constitute such a change;" that is, a constructive change of possession.

It seems to us that the supposed levy in this case, was wanting in these requirements of openness, publicity and seasonable assertion of dominion. The organ in controversy was probably ponderous, and not susceptible of being easily removed. No manual possession, therefore, was necessary It was in view of the officer, and sufficiently within his power of control. But his proceedings were secret. He seems to have avoided observation, rather than to have sought to give to his acts a seasonable notoriety. A commendable delicacy in respect to the feelings of the congregation about to assemble for worship, may have had something to do with this. But an officer must not allow his consideration for the feelings of debtors to carry him so far as to jeopardize the rights of third parties. And there was no need of his disturbing the congregation. The sexton, who was the custodian for the indebted church, of the building and its contents, was in the building. He could have seen and spoken to him; and he ought, at least, to have done so, and to have asserted his claim of dominion over the organ in his presence.

Perpetual injunction ordered.

SUTLIFF, C.J., and PECK, GHOLSON and SCOTT, JJ., concurred.