Johnson, Chief Judge.
The facts of this case are complex and difficult to condense. So far as necessary, they will be stated in connection with the legal questions considered. From June, 1868, to April, 1870, judgments were rendered against Bobert Ogden, in favor of a large number of bis creditors. Upon these several judgments, executions, alias executions, and orders of sale were issued at sundry times prior to October 13, 1870, and placed in the sheriff’s hands for service. On said 13th of October, the sheriff having then in his hands sundry executions to levy, and orders of sale, on which previous levies had been indorsed, for the first time took actual possession of certain property on which nominal levies, or paper levies, had been previously made, consisting of a stock of goods in a store, which Ogden was carrying on, and the machinery in a manufactory of brass, which he owned and was operating. This machinery consisted of a stationary engine, boiler, chimney, lathes, pipe cutting machines, scales, shafting, belting, pulleys, and fixtures. The property was sold November 16, *89 1870, and the money brought into court by the sheriff for distribution. Exceptions were taken to the order distributing the money.
1. It is claimed that the court erred in holding that there was no valid levy on the goods in the store prior .to October 13, 1870.
The first or original executions issued upon said judgments were dated and received by the sheriff at the times following, to wit:
1. Nason & Co., dated June 30, 1868, received June 30, 1868.
2. Wood & Co., dated July 2,1869, received July 3,1869.
3. Corning & Co., dated September 10, 1869, received September 10, 1869.
4. Spang, Chalfant & Co., dated September 10, 1869, received September 10, 1869.
4. John ITorton, dated December 9, 1869, received December 9,1869.
5. Tucker Maufacturing Co., dated January 28, 1870, received January 28, 1870.
6. Hogle & Co., dated May 2,1870, received May 2,1870.
7. Holmes & Co., dated May 9,1870, received May 9,1870.
8. Hecht & Co., dated May 11,1870, received May 11,1870.
9. Murphy & Bros., dated May 23, 1870, received May 23, 1870.
10. Wm. Brownell & Co., dated August 8,1870, received August 8,1870.
10. Petry, Booth & Co., dated August 8, 1870, received August 8, 1870.
11. Blatchford & Co., dated October 6, 1870, received October 6, 1870.
11. McCormick & Gibson, dated October 6,1870, received October 6, 1870.
11. Hunter, Keller & Co., dated October 6,1870, received October 6, 1870.
The original levies indorsed upon said' execution were made in the following order:
*90 1. Nason. & Co., on machinery, June 30, 1868, and on stock, April 12, 1869.
2. Wood & Co., on stock and machinery, July 10, 1869.
3. Corning & Co., Sept. 11, 1869.
3. Spang, Chalfant & Co.: Sept. 11,1869.
4. John Horton, Dec. 9, 1869.
5. Tucker M’f’g Co., March 6, 1870.
7. Holmes & Co., May 14, 1870.
7. Hecht & Co., May 14, 1870.
8. Murphy Bros., May 28, 1870.
9. Hogle & Co., June 28, 1870.
10. Brownell & Co. Sept. 6, 1870.
10. Petry, Booth & Co., Sept. 6, 1870.
11. Blatchford & Co., Oct. 6, 1870.
11. McCormick & Gibson, Oct. 6, 1870.
11. Hunter, Keller & Co., Oct, 6, 1870.
At the time of said last levy, on October 13, 1870, when the sheriff took actual possession, and under which the sale was made, the following executions were in his hands and had been received by him in the following order, and expired or were returnable as follows :
1. John Horton, vendi received August-16, 1870, expired October 15, 1870.
2. Nason & Co., 3 vendi received August 24, 1870, expired October 23, 1870.
-. Wood & Co., vendi received August 24,1870, expired October 23, 1870.
3. Spang, Chalfant & Co., vendi received September 3, 1870, expired November 2,1870.
3. Corning & Co., vendi received September 3, 1870, expired November 2,1870.
4. Tucker Manufacturing Co., vendi received September 6, 1870, expired November 5, 1870.
4. Brownell & Co., vendi received September 6, 1870, expired November 5, 1870.
4. Petry, Booth & Co., vendi received, September 6,1870, expired November 5,1870.
*91 5. Hecht & Co., vendí received September 7,1870, expired November 6,1870.
6. Murphy & Bros., vendí received September 20,1870, expired November 19, 1870.
7. Nason & Qo.,fi. fa. received October 5,1870, expired December 3,1870.
8. Blatchford & Co., fi. fa. received October 6, 1870, expired December 5, 1870.
8. McCormick & Q.,fi.fa. received October 6, 1870, expired December 5, 1870.
8. Hunter, K. & Co., fi.fa. received October 6,1870, expired December 5, 1870.
On November 1, 1870, when first notice of sale was published, all of said executions, except those of Nason & Co., and Wood & Co., which had expired and were returned October 23, 1870, and that of Horton, which had been returned and another issued, on October 15, 1870, remained in the hands of the sheriff’, and the following additional executions had been placed in his hands:
9. Hogle & Co., received October 29,1870, and which expired December.28,1870.
10. Holmes & Co., received November 1,1870, and which expired December 31, 1870.
There was also in the hands of the sheriff at this time, the plu. fi. fa. in favor of Nason § Co., issued October 4, 1870, while said three vendí remained in his hands.
At the time of sale, to-wit, November 16, 1870, all of above executions had expired, except the following:
1. Murphy & Bros., received September 20, 1870, returnable to November 19, 1870.
2. Nason & Co., received October 5, 1870, returnable to December 3,1870.
( Blatchford & Co., 1 Received October 6,1870, 3. -< McCormick & G-., > returnable to December 5, (Hunter, Keller & Co. j 1870.
4. John Horton, received October 15,1870, returnable to December 14,1870.
5. Hogle & Co., received October 29,1870, returnable to December 28,1870.
*92 6. Holmes & Co., received November 1,1870, returnable to December 31, 1870.
Upon these facts, the court, at December term, 1871, found and decided as follows :
“ That the levy of Holmes & Co., and the levy of Hogle & Co., now owned by the sheriff, are the first liens upon the stationary engine, boiler, chimney, lathes, pipe-cutting machines, scales, shafting, belting, pulleys, and fixtures in said store, and that the same sold for $2,029.50..
“ That the proceeds of stock and other personal property, so sold by the sheriff, are to be distributed among the other creditors holding executions, as follows :
“ 1. To John Horton, the sum of $321.90, with interest to November 16,1870, with $10.95 costs.
“2. To James Wood & Co., $1,232.89, with interest from January 1, 1870, and $12.40 costs.
“ 3. To Jos. Nason & Co., $1,399.12, and $14.95 costs.
, “ 4. To Spang, Chalfant & Co., $596.99, and interest from August 21,1869, and $11.95 costs.
“ 5. To Corning & Co., $966.75, with interest from September 8, 1869, and $12.15 costs.
“ 6. To Tucker Manufacturing Co., $195.50, with interest from January 3,1870, to November 16, 1870, and $11.05 costs (if there be funds.)
“ 7. To Petry, Booth & Co., $32.75, with interest, and costs (if funds.)
“ 8. To Brownell & Co., $49.15, with interest, and $23.50 costs (if-funds.)
“ 9. To J,Hecht & Co., $257.40, with interest, and $11.36 costs (if funds.)
“ 10. Balance, if any, to Murphy & Bros., upon their claim, etc.”
In regard to these levies upon the machinery, as well as the stock of goods in the store prior to October 13, 1870, the evidence is clear that they were but nominal, or mere paper levies. None of this property was actually seized or taken in execution. There was no distinct, open, or unequivocal assertion of dominion asserted by the sheriff *93 over the property, such as its nature and character would admit of, or as constituted any interference with the possession of the judgment debtor, either actual or constructive. The property was in no sense, as against subsequent levies, in the custody of the officer. Had he been sued for trespass, he could have safely plead not guilty, without relying on the writs for his protection.
The sheriff testifies: “ No arrangement that Ogden should shut up. Bales were to go on, and he to continue business. Prior to October 13, 1870, Ogden had been left to carry on his ordinary business and had continued in possession.”
Miller, Ogden’s bookkeeper, says: “ Ogden kept open the store at all times, . . and continued purchasing, receiving, and selling goods, carrying out contracts, and going on uninterruptedly with his business, as before the levies were made, except there was a suspension of the brass manufactory caused by its being no longer profitable.”
Again he says: “ The purchases or additions to the stock during the period I was there” (from May 11, 1869, to September 5,1870), “ amounted to from $12,000 to $15,000. The stock amounted to about the same in value, when I quit, as when I commenced, the sales amounting to about the same as the- purchases. The machinery was used just as it had been before. The object of the delay was to benefit Ogden. He was to protect and indemnify the sheriff”
The deputy sheriff (Potter) says, he wanted Ogden to assign to the sheriff' accounts for indemnity, and that: “ Ogden was to go on as usual with his business. The store was to be kept open as it had been, Ogden continuing his sales and Ms work.”
The sheriff further says, that Ogden told him he should not suffer, and that he “ also stated to me that certain accounts should be turned over to me when jobs finished.”
It is apparent, this is not the case of an actual seizure or taking of the property in execution, leaving it in the possession of the judgment debtor temporarily, but a nominal *94 levy, merely, by indorsement on the writs, under an arrangement, that the sheriff' was not to interfere with the continued absolute possession and control of the property by Ogden, who was to use it free from any interference of the sheriff, who was to be indemnified for his omission of official duty. The motive actuating the sheriff was, no doubt, one of kindness for Ogden, w’hom he desired to help through his embarrassments. The evidence shows that the sheriff was allowing Ogden to go on, buying and selling to make the money to pay off'these executions without process.
On the 13th of October, the sheriff becoming satisfied that Ogden was not acting in good faith with him, seized the property, and on the 16th of November sold it.
In order to make a valid levy, on goods and chattels, the sheriff' must have them within his powmr and control, or at least within his view, and if he then makes a levy, it will be good if followed up afterward within a reasonable time, by his taking possession in such a manner as to apprise every body of the fact of its having been taken in execution.
Such levy, to be valid, as against subsequent levies, and, as against a subsequent purchaser or mortgagor, must be actual and with continued manual seizure by the officer, when such seizure is practicable, or if the property is within view or power of control by making such • distinct, open, and unequivocal assertion of dominion over it, as the nature and situation of the property and the circumstances will admit of, or as the judgment debtor may recognize and acquiesce in, and constituting such an interference with the possession, either actual or constructive, as that trespass would lie against the officer, but for the protection afforded by the writ. Minor v. Smith, 13 Ohio St. 82.
It is true, as was held in Acton § Woodnut v. Knowles, 4 Ohio St. 28, that after levy on chattels, the return of the property to the defendant, with or without security for its redelivery, does not fer se avoid the levy.
In that case, there was an actual levy on a horse, the
*95 execution returned not sold for want of time, without further process for fourteen months. In the meantime the property had been returned to the debtor, and it was said, it was a question- of fact whether the levy became fraudulent and void, as tending to hinder and delay other creditors. But when ho levy in fact has been made, and the title and possession remain in the debtor, a mere paper levy is void per se, as against subsequent levies, or boma fide purchasers. Minor v. Smith, 13 Ohio St. 79 ; Green v. Burke, 23 Wend. 493.
In this ease there was no actual levy, no seizure which in contemplation of law changed the title, possession, or right of possession. The property was never in the custody of the officer. By agreement, he omitted to make an actual levy, and allowed the property to remain as before in the custody of the debtor, with full power to use and sell it, to realize the money to pay the debt. At no time was the possession changed by a seizure such as the character of the property would admit of.
The stock of goods on hand when this levy was made was, under this agreement, sold, and others purchased in their place. The machinery in the brass-works was run to fill orders, under a promise that the amount thus earned was to be handed over on these executions. The sheriff was to be indemnified, not for a failure to redeliver, for as there had been no seizure and delivery, there could be no redelivery, but for failure to proceed under the process in his hands. In short, these were mere “ paper levies,” and void.
Under section 421 of the code, the goods and chattels of the debtor are, as against subsequent actual levies, at least only bound from the time they shall be seized in execution. The officer should take actual possession, so far as the nature of the property will admit of. Cary v. Bright, 58 Penn. St. 84; Duncan’s Appeal, 37 Penn. St. 500 ; Logsdon v. Spiney, 54 Ill. 104 ; Borer on Jud. Sales, ch. XXII; Freeman on Judgments, ch. XXIV; Minor v. Smith, 13 Ohio St. 79.
Manifestly, it was the duty of the sheriff to execute the *96 process, and the agreement by which he'omitted that duty was against public policy, and all his proceedings under it were void. The fact that he may have made an inventory and indorsed a levy on the writ does not constitute such a seizure as makes a valid levy, especially where, as in this case, it is understood that the debtor’s power of sale, possession and use were to remain undisturbed. The understanding seemed to be that Ogden was to go on as usual, and himself make the money in his business to pay these executions. The sheriff desired, as did several of his creditors, that he should have the opportunity to pay his debts and save something for himself. As soon as he found that Ogden was not fulfilling his promise to do this, and that he was not using his property as agreed to pay off these executions, he levied the executions then in his hands on. what he then found, by a seizure of the property. But this can not be done where no prior valid levy has been made. Hence a constructive levy of a subsequent writ is not valid, if the levy of the first is a nullity ; for under neither has the property been seized in execution. Ve conclude, therefore, that all the pretended levies prior to October 30, 1870, were mere paper levies, and void, as against an actual levy made on that clay.
II. Bid the court err in ordering the judgments of Hogle & Co. and Holmes & Co. to be first paid out of the money arising from the sale of the machinery ?
At the time of the actual seizure of the property, October 13, 1870, neither of these creditors had executions in the sheriff’s hands. Prior writs in their favor had been returned. Ou the 28th of June previous the sheriff had indorsed as levied a writ in favor of Hogle & Co., and a like proceeding was had on an execution in favor of Holmes & Co., May 10, 1870, but owing to the omission of duty by the sheriff, in not making the money, he was amerced by Hogle & Co., and compelled to pay them ; and, to prevent amercement by Holmes & Co., he also paid off their judgment.
On the 29th of October and 1st of November, while the *97 property was in his hands, by virtue of his actual levy under other executions, made October 13, 1870, and while the property was advertised for sale, the sheriff caused executions, or rather orders for sale, with clause for additional levies, to be issued on these judgments, directed to' himself, for his benefit, for the amounts he had paid Hogle- & Co. and Holmes & Co. If we regard these judgments satisfied by these payments by the sheriff, then the executions thereafter issued were void. If the sheriff be subrogated to the rights of Hogle & Co. and Holmes & Co. to have execution, theu he was interested in the process, and for that reason it is void in his hands. Public policy forbids the sheriff from executing process in which he is interested. He can not with his own money pay the plaintiff and keep the defendant’s property, nor hold the execution and afterward make the money on it. If, while it is in his-hands, he acquires any interest therein, he can not proceed to execute it. So, when he has been attached for not returning the execution, and he pays and takes an assignment, he can not enforce the collection by a subsequent execution. Carpenter v. Stillwell, 1 Kernan, 61; Stewart v. Magness, 2 Cold. (Tenn.) 2 ; Reed v. Pruyn, 7 Johns. 426, Sherman v. Boyce, 15 Johns. 443 ; Morris v. Lake, 9 S. & M. 521; Bigelow v. Brevost, 5 Hill, 566 ; Carpenter v. Thomas, 3 A. K. Marsh. 536; Rorer on Jud. Sales, § 1024.
In such cases, the corouer must act. Code, § 592, and above eases.
Our atteution is called to section 457 of the code of civil procedure, which provides that, -when the sheriff or other officer shall have been amerced, and shall not have collected the amount of the original judgment, he shall be-permitted to sue out an execution, and collect the amount in the name of the original plaintiff. This does not authorize the sheriff to execute this process for his own benefit ; nor does it, in my opinion, warrant the issuing of a vendi, or order of salo, based on a former levy, where other levies have intervened, as this would be to give him pri *98 ority over creditors who had gained a priority over the very judgment for the non-collection of which he was amerced.
Holding, as we do, that there was no valid levy on either the stock of goods or machinery, prior to October 13,1870, the question of priorities in the distribution of the aggregate proceeds, is to be determined by section 424 of the code of civil procedure. At the time of such actual levy, the sheriff had in his hands sundry Ji. fa. executions, as well as orders of sale, or vendi, founded on the previous void levies, and one or more orders of sale, with additional levy clause. As to these different orders, we hold :
1. That an order of sale of personal property, under section 430 of the code of practice, presupposes a previous valid levy of an execution in favor of the same party, but if no levy has in fact been made, or if a levy has been made which, as to subsequent execution creditors who have levied is fraudulent and void, then such order of sale is inoperative and void as against such subsequent levies.
2. Where such order of sale is founded on such void levy, but contains a clause under section 4-31 of the code for an additional levy, such an execution is valid as a fi.fa. execution only, which may be levied on the same property specified in the original void levy.
The judgment of the superior court is reversed, and cause remanded for a distribution of the fund realized from the sale of both stock and' machinery, according to section 424 of the code, excluding the executions on the judgments in favor of Hogle & Co. and Holmes & Co.