Okey, J.
The verdict was right unless the charge was wrong. But the charge, as we shall see, Avas right. Clearly the hams were not held by Elias Thorne in pledge, for, to constitute a pledge, he must have received and retained possession of the property. Nor was this, as against the bank, a valid deposit by a bailor with a bailee, for the reason hereinafter stated. Nor, as to the bank, which does not claim under the instruments executed t.o Elias Thorne, Avere such instruments warehouse receipts, for the firm was not engaged in the business of warehousemen, and the property belonged exclusively to the firm.
There is nothing in the statutory provisions relating to warehouse receipts, in force in 1873 and 1874, which affects the question before us. 1 S. & C. 420-424; S. & S. 93, 94. In several states, however, and in England, the rights, duties and liabilities of persons with respect to such instruments, are regulated by statutes, and in construing those statutes, the eourts have considered the general subject. See Cochran v. Ripy, 13 Bush, 495 ; Sexton v. Graham, 53 Iowa, 181; Price v. Wisconsin, &c., Insurance Co., 43 Wis. 267; Sewing Machine Co. v. Heller, 44 Wis. 265 ; Insurance Co. v. Kiger, 103 U. S. 352; Harris v. Bradley, 2 Dillon, 284 ; McCabe v. McKinstry, 5 Dillon, 509; Yenni v. McNamee, 45 N. Y. 614; Adams v. Merchants’ National Bank, 19 Am. L. Reg. N. S. 714; Greenleaf v. Dows, 12 Reporter, 545; Johnson v. Roe, 10 Central L. Jour. 328. See, also, Edwards on Bail. (2 ed.) §§ 332, 333; 10 Central. L. Jour. 421; Daniel on Neg. Inst. §§ 1713, 1714; Benj. on Sales (2 Am. ed.), §§ 780, 781. The conclusion already stated, that the instruments in question are not warehouse receipts, was reached after a careful examination of these authorities.
The claim that, in so holding, the decision is inconsistent with Gibson v. Chillicothe Bank, 11 Ohio St. 311, is not well founded. In that case, as in this, the instruments claimed to *259 be warehouse receipts were not such receipts, strictly speaking. But in that case it was claimed that Gibson, Stockwell & Co., to whom the receipts were given, were the owners of the property, and evidence was offered to show such ownership. The true ground of that decision appears in the statement of the judge delivering the opinion, that the papers called warehouse receipts were given, “not to secure an indebtedness merely, . . . but on the contrary, that the plaintiffs, under a previous and subsisting contract, furnished and advanced the money for the purchase of the property, upon an agreement on the part of Bartlett & May to so pass to them the title thereto.” The court below charged the jury that the receipts did not even tend to prove such ownership of Gibson, Stock-well & Co., and in so charging cleai’ly erred, and for that error the judgment was properly reversed. To that extent we fully recognize the case as authority. But in this case it is not pretended there was any agreement whereby Elias Thorne became owner of the property. Indeed, there was no proposition on the part of the firm to give, nor on the part of Elias Thorne to receive, a lien upon or interest in the property now claimed to have been embraced by the receipts, until all the property had been purchased by the firm, nor until such property had come to its possession, and, for aught that appears, payment therefor had been made.
The instruments not being as to third persons warehouse receipts, the question arises as to the interest Elias Thorne acquired in the property. We do not doubt that as to persons other than creditors of the firm, and subsequent purchasers and mortgagees in good faith, Elias Thorne acquired an interest in the hams. But the only interest he attempted to acquire was under those receipts, the acts called a delivery of the property having reference solely to perfecting his title under such instruments. The bank, however, was then a creditor of the firm. The statute in force at the time provided, “ that every mortgage or conveyance, intended to operate as a mortgage of goods and chattels hereafter made, which shall not bo accompanied by an immediate delivery, and followed by an actual and continued possession of the things mortgaged, shall be absolutely *260 void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be forthwith deposited as directed in the succeeding section of this act.” 1 S. & C. 475 ; Rev. Stats. § 4150. In this case the place of deposit would have been the office of the township clerk. 3 Sayler, 2219.
Here Was an attempt to create, by the instruments in question, a lien on the hams, to secure the debt of Elias Thorne. There was no change of possession, much less a continued change of possession. There was no execution of a chattel mortgage on the property, much less a filing of such mortgage with the township clerk. The attempt was, therefore, within the inhibitions, and in conflict with the policy of the above section, and the lien so attempted to be secured was, as to the bank, a creditor of the firm, simply a nullity.
Another view of this case may be taken, equally satisfactory to all of us, and leading to the same result. Whether the bank, at the time it received the proceeds of the sale of the hams in payment of its debt, had knowledge that Elias Thorne held the alleged warehouse receipts, is a question concerning which the evidence is in direct conflict. The verdict, in view of the charge to the jury, is virtually a finding that the bank did not have such notice. The finding of a jury can only be disturbed when it appears from the evidence to be clearly wrong (McGatrick v. Wason, 4 Ohio St. 566, 575), and that we cannot say is shown by the evidence in this case. Elias Thorne having permitted the firm to retain the possession and control of the property, the firm sold it and paid the proceeds of the sale to the bank, which was one of its creditors, and, we are bound to say, ignorant of the fact that Elias Thorne had. or. claimed any lien upon, or interest in the property. That a bailor has, ordinarily, a remedy against a person who has converted his property to his own use, is not denied. Roland v. Gundy, 5 Ohio, 202 ; Knapp v. Hobbs, 50 New Hamp. 476. But where a bailee, in violation of his trust, sells the property of the bailor, and applies the proceeds in payment of his (the *261 bailee’s) debt to a third person, who was ignorant of the breach of trust, the bailor cannot maintain, against such third person, an action for money had and received. Kingsley v. Plimpton, 17 Pick. 159; Thatcher v. Pray, 113 Mass. 291; Culver v. Bigelow, 43 Vt. 249 ; Foster v. Green, 7 Hurl. & Nor. 881. In this view the verdict is right, even if the instruments relied on’should be regarded strictly as warehouse receipts.

Judgment affirmed.